**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE THE MATTER OF:** | ) | |
| | ) | |
| **JARLON LINER,** | ) | **18 CV 06163** |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Judge Robert W. Gettleman** |
| | ) | |
| **FCA US LLC, a/k/a FIAT CHRYSLER** | ) | **Maj Judge Jeffrey Cole** |
| **AUTOMOBILES, a Delaware Corporation, and** | ) | |
| **TOMASZ GEBKA, in his Individual Capacity,** | ) | |
| **Defendants.** | ) | |

# <u>CORRECTED COMPLAINT</u>

   **COMES NOW THE PLAINTIFF**, **JARLON LINER,** by and through his counsel, Calvita J. Frederick and Associates, and complaining of the Defendant, FCA US LLC, a/k/a FIAT CHRYSLER AUTOMOBILES, a Delaware Corporation, and TOMASZ GEBKA, alleges as follows:

## <u>THE PARTIES</u>

1. **PLAINTIFF JARLON LINER** ("JARLON" or "Plaintiff") is a male, Black citizen of the United States, and at all times relevant thereto was a resident of the State of Illinois, residing in the County of Winnebago, City of Rockford Illinois.

2. **DEFENDANT FCA US LLC, a/k/a FIAT CHRYSLER AUTOMOBILES ("FCA" or "Defendant"),** is **a Delaware Corporation**, licensed to do business within the State of Illinois having its principal office in Auburn Hills, Michigan, and having a location within the State of Illinois, County of Winnebago, at 3000 W. Chrysler Drive, Rockford, Illinois.

3. FCA employs more than 500 people at their Belvidere/Rockford location.

4. **DEFENDANT TOMASZ GEBKA ("TOMASZ")** is a White male individual citizen of the State of Illinois and is believed to reside in or near the City of Belvidere, County of Boone, and in the geographic boundaries of this Court.

5. At all relevant times, Defendant TOMASZ was employed by Defendant FCA, and was an "employee" of Defendant FCA within in the meaning of 42 U.S.C. § 2000e(f).

## JURISDICTION AND VENUE

6. The claims against the Defendant herein are based upon race discrimination (Black) pursuant to Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981 which prohibits discrimination on the basis of race and further prohibits retaliation for opposing or making charges regarding discrimination.

7. Jurisdiction is conveyed upon this Court as the claims arise under the laws of the United States of America pursuant to 28 U.S.C. § 1343.

8. Venue is appropriate in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 as JARLON'S residence, at all times pertinent hereto, and Defendant's business, as well as all events giving rise to this claim occurred within the counties served by this Court.

## NATURE OF THE ACTION

9. This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* which prohibits discrimination on the basis of race and further prohibits retaliation for opposing or making charges regarding discrimination, and 42 U.S.C. § 1981 and 42 U.S.C. § 1983 to redress violations of Plaintiffs' Equal Protection rights guaranteed under the Fourteenth Amendment of the United States Constitution.

10. Defendants engaged in deliberate and unlawful policies, patterns, and employment practices intended to and did create and proliferate a hostile and abusive work environment based on race

that included violence, intimidation, retaliation, and constructive discharge.

11. Defendants have engaged in the age discriminatory acts, in willful violation of the Age Discrimination in Employment Act of 1967. ("ADEA"), 29 U.S.C.A. §§621 et seq.

12. This is an action also brought under Title VI which prohibits discrimination under any program or activity receiving federal financial assistance.

13. The Defendants have also engaged in common law assault and battery against the Plaintiff as a result of TOMASZ. Since this is not the first time TOMASZ physically struck an FCA employee, Plaintiff also alleges causes of action for assault and battery, and negligent supervision.

## FACTS RELEVANT TO ALL COUNTS

14. JARLON has been employed by FCA since August of 2016 when he was hired as an Industrial Engineering Manager.

15. JARLON was originally interviewed and hired into FCA by Kurt Cvachack, who was the local plant manager and Steve Savoy, the Industrial Engineering Senior Manager. Both Kurt and Steve have since left the employ of FCA.

16. At all times material to this Complaint, JARLON proved his industriousness, presented and represented himself in an orderly and respectful manner, and commanded and continues to command the respect of his fellow employees.

17. Additionally, JARLON demonstrated his capacity and abilities to perform all job tasks to which he was assigned.

18. Shortly after beginning his employment with FCA, TOMASZ became JARLON's manager.

19. In May of 2017, JARLON was part of a group of 12 FCA employees that took a trip to Italy for training at the Fiat location there. Fiat, an Italian company had previously purchased the Chrysler Corporation.

20. JARLON was one of two managers who were part of the 12 FCA employees on the trip to Italy in May of 2017.

21. During the trip, certain FCA employees who were not a part of JARLON'S group and not under his management left work early one day and stayed out all night. The incident was reported to TOMASZ.

22. TOMASZ was not happy and in response to the report in an FCA group meeting, on or about May 31, 2017, TOMASZ struck JARLON in the chest.

23. JARLON left work angry and returned the next day and reported the incident to FCA's local Human Resources Department, ("HR") an assault and battery and also as an act of discrimination.

24. The following morning, HR had JARLON outline what had happened during the altercation with TOMASZ.

25. Two days later, JARLON was told by HR that the investigation was closed.

26. Thereafter, TOMASZ called JARLON in to his office and apologized and said he hit JARLON in an effort to excite the team with energy.

27. In striking JARLON, TOMASZ violated the FCA Code of Conduct which prohibits unwanted physical contact.

28. Prior to this incident, JARLON's performance reviews were average.

29. JARLON has a dual reporting requirement: JARLON reported to TOMASZ, as his local manager and also to Dan Rolka, the Engineering Manager located in Auburn Hills, Michigan.

30. Since JARLON reported the assault to HR, TOMASZ retaliated against JARLON by subjecting him to different treatment than his fellow workers, including but not limited to harsher scrutiny, open and continuous harassment, bullying and efforts intended to embarrass and humiliate

JARLON, and low performance reviews, including a low performance rating on JARLON'S annual review, all based upon race.

31. TOMASZ ensured that JARLON received a low score on his annual performance review when he forced his way into JARLON'S annual performance review and altered the deliverables in the middle of the face-to-face PLM assessment.

32. TOMASZ then graded JARLON low for not having achieved the deliverables TOMASZ set only moments before, in the middle of the Annual Performance Review.

33. The newly set goals that TOMASZ set in the middle of the annual performance review should have been given to JARLON 12 months before the annual review, in order for a fair assessment to have been made as to whether JARLON had achieved the goals.

34. No other FCA Industrial Engineer was required to meet goals performed in the manner that TOMASZ required of JARLON.

35. Also, no other FCA Industrial Engineer had their deliverables changed in the middle of the performance review.

36. Because of the unfair performance review, being physically struck by TOMASZ, and the resulting and ongoing retaliation by TOMASZ, JARLON requested a transfer within FCA, specifically to Kokomo, Indiana where his wife had recently accepted a new job.

37. JARLON applied for three open positions within the company and in response: he was denied one position based upon qualifications; one position was filled and there was no response to the third position.

38. Notwithstanding JARLON not having located a new position, his current position was advertised and filed.

39. The advertising and filling of JARLON'S position before he found a new placement is not in keeping with the customary practices and procedures for current FCA employees seeking an in-house transfer.

40. On Tuesday, May 1, 2018, JARLON received a telephone call from Beth Stafford, an HR manager from the corporate office.

41. Beth advised JARLON that he had two options which were:

    1.    Either accept the position of Industrial Engineering manager in Warren, MI, as a temporary replacement for a person who was out on long term disability, or

    2.    Stay in Belvidere under TOMASZ'S management and be placed on a Performance Improvement Plan ("PIP").

    3.    If he accepts Option 1, JARLON would not be placed on a PIP.

42. JARLON asked Beth if his performance needed improvement and Beth told him "NO".

43. Beth gave JARLON until Friday, May 4, 2018 to tender his decision.

44. On Friday, May 4, 2018 JARLON called Beth and left her a voice mail message indicating he wanted to remain in Belvidere and would accept the PIP. In return JARLON received a text message advising Beth would call him at 1 pm.

45. When Beth returned JARLON'S telephone call, Beth's manager, Ryan, was also on the call.

46. Ryan informed JARLON, as related to his decision to remain in Belvidere "that train had already left the station", and that they had already interviewed 3-4 people to take his position in Belvidere.

47. JARLON questioned Beth and Ryan as to whether he ever really had a choice and the response was no.

48. The position that JARLON was being forced to take in Warren, MI was a backfill position, which meant that when Trish Bowman returned from long term medical leave that JARLON would be out of a job.

49. FCA's intended to force JARLON out of the company by insisting he relocate to what they knew was a temporary position.

50. FCA'S insistence that JARLON take the temporary position in Warren Michigan was a constructive termination of JARLON'S employment.

51. JARLON was ready to relocate immediately to Warren but was told by FCA management that he should wait for further instruction.

52. In the meantime, JARLON was placed on a PIP.

53. On or about July 13, 2018, JARLON resigned from his position at FCA.

54. JARLON was subjected to disparate treatment resulting in a hostile work environment, and constructive termination, including but not limited to:

    A.    No real investigation of JARLON'S charges of assault and battery were conducted by HR prior to arriving at the conclusion that the investigation of TOMASZ's conduct should be closed.

    B.    Many FCA employees witnessed TOMASZ'S behavior when he struck JARLON in an open meeting attended by many FCA employees, but none of the other FCA employees were questioned by HR as to their account of what happened during the altercation.

    C.    On many occasions, TOMASZ singled JARLON out in group meetings, asking him questions intended to belittle, humiliate and embarrass JARLON in front of his co-workers.

    D.    On another occasion TOMASZ used racially insensitive words in a conversation with JARLON, including the word "slave", which JARLON believed was intended to intimidate him.

     E.    On several occasions JARLON was given conflicting directions by TOMASZ and his other manager which made it difficult to know what to do and whose directive to follow;

     F.    On one occasion JARLON noted and corrected an error on a presentation, prior to the presentment, but TOMASZ insisted on making a big deal of the error and using it as an excuse to take over JARLON'S presentation in an effort to demean and belittle JARLON in front of his co-workers.

55. TOMASZ'S behavior violated company policy and procedures which state: "FCA US LLL policy prohibits harassment, and inappropriate discriminatory comments towards and/or around any individual in the work environment.

56. FCA failed and refused to reprimand TOMASZ in any manner for his prohibited behavior directed toward JARLON.

57. The disparate treatment JARLON was subjected to at the hands of TOMASZ and HR, created a hostile, intimidating and uncomfortable work environment for JARLON.

58. TOMASZ and HR did not subject other similarly situated FCA employees to the hostile, intimidating, and uncomfortable work environment they created for JARLON.

59. JARLON met the legitimate objectives of his work assignments and got along with TOMASZ and his fellow employees as best he could.

60. Plaintiff was humiliated, harassed, and intimidated daily by TOMASZ.

61. FCA applies workplace rules and regulations in a racially-biased manner.

62. In response to this hostile work environment, Plaintiff made repeated complaints to the FCA.

63. In response to the complaints, Defendant did nothing to remedy the hostile work environment.

64. Instead of taking steps to alleviate the hostile work environment, Defendants instituted a policy of retaliation against Plaintiff.

65. Similarly situated non-black employees with performance comparable to JARLON'S were not placed on a PIP, required to relocate and take a temporary position, and constructively discharged.

66. Plaintiff was also subjected to unwelcome, and inappropriate conduct during his day-to-day activities at FCA.

67. Based upon TOMASZ'S threatening demeanor and the fact that TOMASZ had struck another FCA employee, Plaintiff feared that TOMASZ was going to physically attack him again.

68. Plaintiff also believed that TOMASZ'S actions were intended to bait him and force an altercation with the Plaintiff that would justify (a) unwarranted disciplinary charges being filed against Plaintiff and/or (b) termination, and/or (c) the intervention of the Rockford Police Department, a situation that Plaintiff believed would not end up favorable for him.

69. The pervasive harassment, intimidation, and violence in the workplace aimed at Plaintiff was meant to intimidate and force Plaintiff and other Black employees into accepting their status as a second-class citizen within FCA, or to resign.

70. Defendant FCA created a negative workplace environment for Plaintiff through their actions and/or inactions, which conduct constituted a Title VII violation against the Plaintiff and created intolerable working conditions.

71. In response to the hostile, abusive and negative work environment during his day-to-day activities, Plaintiff could only either continue to suffer or be constructively discharged.

72. Plaintiff's involuntary resignation resulted from the intolerable working conditions

73. On or about July 13, 2018, Plaintiff was constructively discharged from his position as an Industrial Engineering Manager at FCA.

74. A reasonable person in Plaintiff's position would have found the working conditions intolerable.

75. FCA replaced JARLON with a non-black employee, who was younger than JARLON.

<u>**COUNT I**</u>
<u>**VIOLATION OF TITLE VII DISCRIMINATION BASED UPON RACE**</u>
<u>**AGAINST FCA**</u>

76. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 75 and above.

77. Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment practices and specifically 42 U.S.C.A. § 2000e-2 provides in pertinent part:

> **"(a) Employer practices**
> a.     It shall be an unlawful employment practice for an employer—
>> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

78. Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination based upon race and age with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, a true and correct copy of which is attached to this Complaint as Exhibit "A".

79. Plaintiff has filed this cause pursuant to a "Right to Sue Letter" issued by the Equal Employment Opportunity Commission within the statutory time requirement, a true and correct copy of which is attached to this complaint as Exhibit "B".

80. Plaintiff, at all times pertinent to this Complaint, was a resident within the venue and jurisdiction of this judicial district and was within the protected race group (Black) as provided by Title VII.

81. The Defendant at all times relevant to this Complaint, operated and did business within the venue and jurisdiction of this judicial circuit.

82. During the course of his employment the Plaintiff came under the supervision of TOMASZ, who subjected JARLON to differential terms and conditions of employment because of his race.

83. The Defendant FCA'S conduct as previously alleged at length herein and as described in the Charge of Discrimination attached to this Complaint constitutes discrimination based upon race in direct violation of Title VII.

84. As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in his career and to his person and has otherwise suffered monetary damages.

85. WHEREFORE, Plaintiff JARLON LINER, demands judgment against the Defendant, FCA, as follows:

    A.    For retroactive reinstatement to his employment position at the time of termination with all back pay, benefits and other emoluments of employment;

    B.    For an award of $300,000 in compensatory damages suffered because of the discrimination;

    C.    Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

    D.    For attorney's fees and costs of this suit, pursuant to applicable statute; and

    E.    For such other and further relief, as is just and equitable.

## COUNT III
## VIOLATION OF 42 USC § 1981 – AGAINST FCA AND TOMASZ

86. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 75.

87. The claims against the Defendants herein are based upon discrimination based upon race.

88. Jurisdiction arises pursuant to 28 U.S.C. § 1343.

89. Venue is appropriate as JARLON'S residence, and Defendants residence and business, as well as all events giving rise to this claim occurred within the counties served by this Court.

90. Title 42 U.S.C. § 1981 provides in pertinent part:

91. "(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination …"

92. At all times herein mentioned, JARLON was a person protected by the provisions of 42 U.S.C. § 1981.

93. FCA deprived JARLON of his rights to make and enforce contracts granted to him by statutes of the United States when they deliberately and intentionally discriminated against him based upon his race by setting in place a campaign designed to, and did, result in JARLON'S constructive termination.

94. Defendant FCA maintains a widespread practice of treating Black employees, (based upon their race) especially JARLON less favorably than his co-workers who are not Black.

95. Although the practice is not authorized by written law or express company policy, the practice of discrimination in the nature of disparate treatment and the creation of a hostile work environment is so permanent and well-settled as to constitute a custom and/or usage with the force of law.

96. Defendants FCA practices represent a widespread practice of racial discrimination, especially towards Blacks.

97. JARLON was treated less favorably than his colleagues because he is Black, caused by an existing, unwritten, unconstitutional policy, which is directly attributable to a final policymaker.

98. The final policy makers for Defendant FCA include TOMASZ and other members of management, including HR.

99. JARLON alleges a pattern of conduct that gives rise to a plausible claim that an unconstitutional custom, pattern or practice exists. Specifically Blacks who occupy the position of Industrial Engineering Manager are treated differently and denied the same opportunities as their Caucasian counterparts because of discriminatory animus and intent.

100. This supports JARLON'S claim of having suffered adverse employment actions by conduct tantamount to bullying, arbitrary and inconsistent directives, demeaning and humiliating assignments, intentional and public humiliation, unwarranted discipline, and finally, constructive termination.

101. JARLON has been employed by FCA since August of 2016 when he entered into an agreement for employment with FCA.

102. Plaintiff at all times material to this Complaint proved his industriousness, presented and represented himself in an orderly and respectful manner and commanded and continues to command the respect of his fellow employers.

103. Additionally, JARLON demonstrated his capacity and abilities to perform all job tasks to which he was assigned.

104. Rather than support JARLON in his position of *Industrial Engineering Manager*, Defendant FCA intentionally discriminated against JARLON in the following ways: by refusing to take any action against TOMASZ when they knew that TOMASZ wrongfully struck JARLON; by refusing to intervene when they knew or should have known that TOMASZ was harassing JARLON on a daily basis in retaliation for filing a complaint against TOMASZ; by allowing TOMASZ to force his way into JARLON'S performance review; by supporting TOMASZ'S interposing of new

objectives in the middle of JARLON'S annual performance review; by supporting TOMASZ'S grading JARLON low on his annual performance review for failing to meet the newly set objectives; by insisting that JARLON relocate to Warren Michigan; by insisting that JARLON take a position they knew was temporary; by placing JARLON on a PIP when they knew JARLON had no performance issues; by advertising, interviewing for, and filing JARLON'S position when they knew JARLON had not been offered another position within the company.

105.    FCA's intentional discriminatory animus through the actions of its employee TOMASZ was all based upon race.

106.    FCA knew about or reasonably should have known about the hostile work environment created by TOMASZ and HR and failed to take appropriate remedial action to protect JARLON.

107.    TOMASZ'S intentional discrimination interfered with JARLON'S right to enforce his agreement with FCA including the performance, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, and the wrongful constructive termination of that contract.

108.    As a result of the Defendant FCA'S, discrimination based upon race, JARLON has suffered injury to his career, as well as emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life, and other losses for which he is entitled to compensatory damages in accordance with 42 U.S.C. § 1981.

   a.    WHEREFORE, Plaintiff JARLON demands judgment against the Defendant FCA, as follows:

      A.    Actual damages in the amount of lost wages and back pay from July 13, 2018 to present or the date of JARLON'S re-employment, including any differential in pay;

14

B.   Compensation for loss of employee benefits, including medical, dental, life, 401K, pension, stock options and retirement benefits;

C.   Additional compensatory damages for Plaintiff's mental anguish, pain, and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary damages and fringe benefits;

D.   Additional compensation for damages to and the loss of JARLON'S career;

E.   For punitive damages;

F.   All reasonable and necessary attorney's fees incurred as specified;

G.   All costs of court; and

I;   Such other and further relief as this court deems just and proper.

## COUNT V
## VIOLATION OF THE ADEA

109.   Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 75 above.

110.   Plaintiff brings this action pursuant to the Age Discrimination in Employment Act of 1967. ("ADEA"), 29 U.S.C.A. §§621 et seq.

111.   Jurisdiction also arises pursuant to 28 U.S.C.A. §1343(4).

112.   Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination based upon age with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, a true and correct copy of which is attached to this complaint as Exhibit "A".

113.   Plaintiff has filed this cause pursuant to a Right to Sue Letter issued by the Equal Employment Opportunity Commission within the statutory time requirement, a true and correct copy of which is attached to this Complaint as Exhibit "B".

15

114. Plaintiff, at all times pertinent to this Complaint, was a resident within the venue and jurisdiction of this judicial district and was within the protected age group as provided by the ADEA.

115. The Defendant at all times relevant to this Complaint, operated and did business within the venue and jurisdiction of this judicial circuit.

116. Plaintiff was employed by the Defendant from approximately August of 2016 until he was wrongfully terminated on July 13, 2018. At the time of his termination JARLON was 45 years of age. JARLON was replaced with an employee younger than 40 years of age.

117. In direct violation of the ADEA, the defendants engaged in the age discriminatory acts described in the Charge of Discrimination, attached to the complaint and incorporated herein by reference, including but not limited to:

    a.   Refused to take any action against TOMASZ when they knew that TOMASZ wrongfully struck JARLON;

    b.   Refused to intervene when they knew or should have known that TOMASZ was harassing JARLON on a daily basis in retaliation for filing a complaint against TOMASZ;

    c.   Allowed TOMASZ to force his way into JARLON'S performance review; by supporting TOMASZ'S interposing of new objectives in the middle of JARLON'S annual performance review;

    d.   Supported TOMASZ'S grading JARLON low on his annual performance review for failing to meet the newly set objectives;

    e.   Insisted that JARLON relocate to Warren Michigan; by insisting that JARLON take a position they knew was temporary;

    f.   Placed JARLON on a PIP when they knew JARLON had no performance issues;

    g.   Advertised, interviewed for, and filled JARLON'S position when they knew JARLON had not been offered another position within the company.

h.  Admonished, humiliated and embarrassed JARLON in front of his colleagues by suggesting he had committed sexual harassment, and then wrongfully terminating him for a wrong he did not commit;

i.  Treated JARLON differently from other similarly situated employees;

j.  Subjected JARLON to scrutiny, discipline, wrongful allegations of misconduct and harassment as part of a conspiracy intended to and did result in his termination;

k.  Created a hostile work environment by the activities listed above;

l.  Failed and refused to give JARLON notice and opportunity to defend the accusations against him; and

m.  Failed and refused to conduct an honest, open and good faith investigation of the charges levied against JARLON by Malinda and Shareera.

118.   As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in his career and has otherwise suffered monetary damages.

WHEREFORE, Plaintiff JARLON, demands judgment against the Defendant, FCA as follows:

A.  For damages in an amount in excess of $75,000, equal to Plaintiff's back pay and benefits from July 13, 2018 through the present pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (b);

B.  For an award of compensatory damages for Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

C.  For reinstatement to his previous position, or in the alternative, for front pay, pursuant to Section 7 (e) of the ADEA, 29 U.S.C.A. §626 (b);

D.  For Attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (c); and

E.  For such other and further relief as is just and equitable.

## COUNT VI
## ADEA – WILLFUL VIOLATION

119.   Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 75 and 110-118 above.

17

120.     Defendant's discriminatory conduct was intentional and/or in reckless disregard for Plaintiff's rights under the law and these acts constitute willful indifference to said rights.

WHEREFORE, Plaintiff JARLON, demands judgment against the Defendant, FCA as follows:

        A.      For damages in an amount equal to Plaintiff's back pay and benefits from July 13, 2018 through the present pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (b);

        B.      For an award of compensatory damages for Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

        C.      For reinstatement to his previous position, or in the alternative, for front pay, pursuant to Section 7 (e) of the ADEA, 29 U.S.C.A. §626 (b);

        D.      For Attorney's fees and costs of this suit, pursuant to Section 7(b) of the ADEA, 29 U.S.C.A. §626 (c);

        E.      Punitive damages; and

        F.      For such other and further relief as is just and equitable

## COUNT VII
## ASSAULT AND BATTERY AGAINST TOMASZ

121.     Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 75 above.

122.     Civil battery in Illinois is defined as having four elements: (1) that the defendant had the intent to cause a harmful or offensive contact with plaintiff; (2) that the defendant actually made unauthorized physical contact with plaintiff that was harmful; (3) that plaintiff was injured; (4) that defendant's action caused the injury to plaintiff.

123.     On or about May 31, 2017, Defendant TOMASZ struck Plaintiff JARLON in his chest.

124.     Defendant TOMASZ intended his contact with Plaintiff to be both harmful and offensive.

18

125.    Defendant TOMAZS actually made the harmful and offensive contact with Plaintiff and said contact was unauthorized;

126.    As a result of Defendant TOMASZ'S contact, Plaintiff was injured both physically, mentally and emotionally, by the striking of Plaintiff and also by the conduct exhibited against the Plaintiff by TOMASZ and others, including and not limited to Plaintiff's constructive behavior, all of which occurred as a result of and damages subsequent to the assault and battery.

127.    The injuries suffered by Plaintiff are a direct result of Defendant TOMASZ'S actions.

WHEREFORE, Plaintiff JARLON, demands judgment against the Defendant, FCA as follows:

A.      For an award of compensatory damages for Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

B.      Punitive damages; and

C.      For such other and further relief as is just and equitable.

## COUNT VIII
## NEGLIGENT SUPERVISION AGAINST FCA

128.    Plaintiff restates and realleges each and every allegation contained in Paragraphs 1-75 .and Paragraphs 122-127 as though fully set forth herein.

129.    Defendant failed to train, supervise, and monitor their employees, agents, and servants despite their duty to do so.

130.    At all material times, Defendants, and each of them, had the power, ability, authority and duty to supervise, control, and train their employees, agents and servants.

131.    Defendants knew or should reasonably have known that their agents, servants, and employees were not adequately trained to protect the Plaintiff and prevent the discriminatory treatment of JARLON initiated at the suggestion and hands of his supervisors.

132.    Defendants knew or should reasonably have known that such lack of training would proximately result in the disparate and discriminatory treatment of JARLON, the assault and battery, and subsequent constructive termination of JARLON'S job resulting in injury and emotional distress to Plaintiff.

133.    Despite such duty and reasonable knowledge, Defendants failed to supervise, control and train their agents, servants, and employees.

134.    At all material times Defendants had the power, ability, authority, and duty to intervene, supervise, prohibit, control, regulate, discipline, and/or penalize the conduct of their agents, servants, and employees so as to prevent injury to the Plaintiff.

135.    At all material times, Defendants knew or reasonably should have known that TOMASZ and other FAC personnel were engaging in the above-mentioned acts and omissions, that they were not adequately trained to protect Plaintiff's from abuse and retaliation, and that such acts and omissions and such lack of training would proximately result in assault and battery, constructive termination, injury and emotional distress to Plaintiff.

136.    Despite their duty to supervise their agents, servants and employees, Defendants negligently failed to act so as to prevent such termination and injury to Plaintiff.

137.    As a proximate cause of the acts and omissions of Defendant, Plaintiff was subjected to injury to his body, wrongful constructive termination, and injury to his career, including but not limited to that described above and emotional distress.

138.    As a proximate cause of the acts and omissions of Defendant, Plaintiff was subjected to injury to his body, wrongful constructive termination, and injury to his career, including but not limited to that described above and emotional distress.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff's and each of them respectfully prays as follows:

A. For entry of an award of compensatory damages against Defendant in an amount equal to the loss of income and expenses related to the wrongful constructive termination.

B. For entry of an award of punitive damages in an amount equal to 2% of Defendant's net worth.

C. For legal interest on such sums from the date of judgment until paid.

D. For such other and further relief as this Court deems just and proper.

## COUNT IX
## RETALIATION AGAINST FCA

139. Plaintiff realleges and incorporates by reference paragraphs 1 through 75 and 77-85 inclusive.

140. Plaintiff has been threatened, subjected to racial and intimidating and derogatory statements, denied opportunities to complete his work, received negative performance reviews, and wrongfully placed on a PIP, denied opportunities to obtain a transfer, faced assault and battery, demeaned and humiliated in front of his peers, in retaliation for opposing and making charges regarding conduct Plaintiff reasonably believed to be an unlawful employment practice under Title VII in violation of 42 U.S.C. § 2000e-3(a).

141. As alleged above, these actions began occurring shortly after May of 2017, when Plaintiff filed a complaint with the FCA Human Resources Department and the EEOC and continued to the day when Plaintiff was constructively discharged.

142. Up to the date of Plaintiff's constructive discharge, Plaintiff continued to be harassed and retaliated against by his supervisor TOMASZ, who continued to single Plaintiff out for mistreatment.

143.  A reasonable person in Plaintiff's position would find the Defendant's actions materially adverse.

144.  Defendant acted willfully and in bad faith.

145.  WHEREFORE, Plaintiff demands judgment against Defendant FCA for reinstatement, transfer, compensatory, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

Respectfully submitted,

JARLON LINER

By;   s/ Calvita J. Frederick
        Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 6184001