IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JARLON LINER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 6163 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| FCA US LLC, a/k/a FIAT CHRYSLER AUTOMOBILES, a Delaware Corporation and, TOMASZ GEBKA, in his Individual Capacity, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Plaintiff filed a Motion to Compel and for Sanctions on October 7, 2019. [Dkt. ##50-51]. The motion lists a large number of interrogatories and document requests to both the corporate and individual defendant, number by number, that defendants have objected to. Plaintiff seeks responses rather than objections and also outlines the difficulties encountered with scheduling depositions of one of the individual defendant and two of the corporate defendant's employees. Finally, the plaintiff asks that the defendants be subjected to "the highest form of discovery sanctions that can be issued for interference with the discovery process."[1] Fact discovery is to end on 10/21/19. [Dkt. #41] This Opinion supplements the rulings made in court on October 17, 2019.

---

[1] A day later, after the court had reviewed and begun consideration of the motion, the plaintiff filed a lengthy "Motion for Leave to Filed Amended Motion to Compel Discovery Responses and for Discovery Sanctions." [Dkt. #52]. Plaintiff said that the original motion was 2 pages too long, that there were several unspecified errors, and that there was information missing from plaintiff's counsel's Declaration. It will be assumed that the errors were insubstantial, and the missing information has been added to this Opinion.

**A.**

Plaintiff filed this race discrimination in employment case on September 10, 2018, and discovery began under the Mandatory Initial Discovery Pilot, with initial submissions due on December 19, 2018, and ESI submissions due on January 28, 2019. [Dkt. # 16]. At the initial status hearing on December 30, 2018, Judge Gettleman ordered discovery to close by August 20, 2019. [Dkt. #19].

At the parties' initial status hearing before me on June 4, 2019, I learned that plaintiff had not yet issued any discovery requests and, according to defendants, had not responded to their discovery requests. I ordered the parties to have a Local Rule 37.2 conference regarding their discovery issues, and set a status for July 18th to see what progress they had made. [Dkt. #23]. Not much more than a week later, however, the defendants filed a motion to compel discovery responses from plaintiff, noting a number of claimed deficiencies, including: plaintiff had yet to provide a computation of damages, which had been due on December 19, 2018, under the MIDP Order; plaintiff had failed to respond to defendants' requests for production of documents; plaintiff had failed to respond to defendants' interrogatories. Responses were all overdue, although defendants had agreed to extensions amounting to 26 days. [Dkt. #24]. I granted the defendants' motion on June 18, 2019, and cautioned the plaintiff that under basic Rules, continued non-compliance with discovery obligations could result in sanctions, possibly including dismissal. [Dkt. # 26].

At the next status hearing (which had been postponed two weeks at the parties' request so they could confer over outstanding discovery matters) on July 18th, it was reported that plaintiff had only partially complied with FRCP 26(a)(1) and only recently attempted to conduct certain basic discovery; the defendants had not done much better. Neither side had even taken a single deposition

despite the imminent close of discovery in a month on August 20, 2019. [Dkt. #32]. The defendants' counsel was bristling at the fact that plaintiff's counsel had chosen to make discovery requests through email rather than formal service and he had not been asked if that were acceptable. As time was running out for the parties, I encouraged some flexibility. Following the hearing, defense counsel informed my chambers that his client had finally agreed to accept discovery by email. [Dkt. #32].The conduct of the defendant's then counsel in this regard was unjustifiable and intentionally obstructionistic.

After that, on July 22nd, defendants' counsel emailed plaintiff's counsel indicating they would like to depose plaintiff, and suggested dates of August 15th or 19th. Although defendants' counsel asked for a response by July 25th, plaintiff didn't get back to them until August 7th when she asked when they would respond to her discovery requests, and indicated she would like to depose Tomasz Gebka on August 14th, 15th or 16th, but understandably wanted responses before that. Counsel said there were several other depositions she wanted to take and would let the defendants know their names. She didn't respond to the defendants' dates for her client's deposition. Defense counsel responded that same day, stating their responses would be provided by the August 18th deadline. They also informed plaintiff's counsel that Mr. Gebka was out of country on vacation until August 19th and, as discovery closed the next day, they would not oppose a ten-day extension for the purpose of taking his deposition. [Dkt. #50-8].

The next thing that happened should surprise no one. On August 9, 2019, eleven days before the end of discovery, plaintiff filed a motion for a 60 day extension of the deadline, from August 20th to October 20th. [Dkt. #33]. Counsel offered a number of reasons why the extension was warranted:

    1. Shortly after December 20, 2018, plaintiff's counsel sprained both her ankles.

> 2. She thereafter contracted bronchitis.
> 3. In may of 2019, she sprained her foot and had to keep off of it for six weeks.
> 4. Plaintiff's counsel was a solo practitioner with a heavy workload.
> 5. Plaintiff's deposition was scheduled for the same day defendants' discovery responses were due, August 19th.
> 6. Plaintiff still had 4-5 other depositions to take, with less than 2 weeks left in discovery, including named defendant Gebka.
> 7. Gebka was out of the country.

[Dkt. #33]. Upon hearing the plaintiff's motion on August 19th, I noted that none of her claims were supported by any evidence or even by an appropriate Declaration. [Dkt. #38]. Plaintiff filed a declaration supporting her claims the next day and, given counsel's medical difficulties, I granted plaintiff's motion for an extension on August 21st, ordering all fact discovery be *completed* – not merely requested – by October 21st. [Dkt. #41].

Despite that warning, deposition scheduling attempts seemingly did not occur for over a month. On September 26th, plaintiff's counsel noticed the deposition of Mr. Gebka for October 8th, of Mr. Finley and Mr. Valez the morning and afternoon of October 9th, respectively, in Chicago. Plaintiff's counsel mistakenly referred to both dates as Tuesday. [Dkt. #50-10,11,12]. Plaintiff's counsel also mistakenly requested Mr. Finley, who is not a party, to produce documents at his deposition. There was no *subpoena duces tecum*, *see* Fed.R.Civ.P. 30(b)(2), 34, *Webb v. Bender*, 717 F. App'x 642, 644 (7th Cir. 2018), and even if Mr. Finley were a party, he was given only two weeks to respond to the "document request" instead of requisite 30 days. *See* Fed.R.Civ.P. 34(B)(2)(A). After a week, on October 3rd, defendants' counsel emailed plaintiff's counsel to inform her that none of those dates would work. Counsel said there were "several references to to Tuesday October 8 and Tuesday October 9", but his schedule would not permit any depositions that week. He asked if any dates the week of October 14th would work. He asked if the depositions of Mr.

Valez and Mr. Findlay – who resided in Michigan – could be done in Auburn Hills. [Dkt. # 50-5]. The week of the 14th, of course, was the final week of discovery, as both sides well knew.

The parties were supposed to have a phone conference regarding discovery issues at 4:30 p.m. on October 3rd. It didn't happen. Plaintiff's counsel emailed defendants' counsel at 4:56 on the 3rd to say she attempted to reach him, without success, although she ran a little late. [Dkt. # 50-5]. On Sunday October 6th, defendants' counsel emailed back, saying he was sorry they hadn't connected. He allowed that Mr. Valez could be deposed in Auburn Hills on October 14th, Mr. Findlay could be deposed in Auburn Hills in the afternoon on October 16th, and Mr Gebka could be deposed in Rockford on October 18th. [Dkt. # 50-14]. The following day, on October 7, 2019, two weeks before the discovery deadline, plaintiff filed a "Motion to Compel and for Sanctions." Defendants' claim that they made several attempts to meet and confer with plaintiff's counsel after that. Defendants' counsel further claims that the parties were able to resolve a number of the issues regarding defendants' discovery responses on October 11th, several days after plaintiff's motion was filed. [Dkt. # 58, at 3]. This may or may not have been the case as neither side alerted the court that any of the pending disputes had been resolved. Defendants' response says nothing at all regarding plaintiff's document requests, so those will be addressed and ruled on.

Certainly, plaintiff's counsel, whose motion this is, ought to have alerted the court immediately when nearly two dozen of the discovery disputes she made part of her motion were resolved. She did not and instead, more time and tax payer expense was wasted as the court went through her many grievances. It was not until mid-day the day before the motion was to be heard, and nearly a week after the parties resolved a number of their differences, that the defendants informed the court of those resolutions. [Dkt. # 58]. Given all the accommodations plaintiff's

5

counsel has received in this case, this is simply unacceptable.

But, back to the mess that discovery has become in this case. Plaintiff tendered her document requests and interrogatories to defendants on July 17, 2019 – the email tender that caused the spat – meaning responses were due a month later, by August 17th. [Dkt. # 50, Par. 1]. When plaintiff sent those requests, August 20th was the end of discovery, so she was playing with fire, especially if, as she says, she wanted response before she deposed defendant, Gebka. The defendants responded in timely fashion on August 16th, but mindlessly lodged objections to all but a few of the requests. Plaintiff was, of course, unhappy with the type of response, and not without some justification. It was consistent with the defendant and its then lawyers approach to discovery. But that was back in mid-August. It is now well into October with, once again, the close of discovery approaching, albeit in significantly delayed fashion at plaintiff's request. According to plaintiff's motion, the next things she did were: re-notice Gebka's deposition on September 29th for October 8th, and two others for October 9th; exchange emails with defendants' counsel on October 3rd through 6th; call defendants' counsel at a pre-arranged time on October 3rd for a Local Rule 37.2 conference – defendants' counsel did not answer the call. [Dkt. # 50, at 9, 17]. From the time she received defendants' responses August 16th until the first week of October, plaintiff's counsel did nothing.

To be sure, plaintiff's counsel had a couple of other medical mishaps. In "early September" she discovered at a doctor visit that she had problems with her blood chemistry; medications for that issue caused negative side effects. [Dkt. # 50-9, Declaration of plaintiff's counsel, Par. 4]. In the wake of that, she was unable to work. [Dkt. # 50-9, Par. 6]. Then, "[r]ecently [counsel] was attacked by her neighbors [sic] 100+ pound Pit Bull" and has had to seek treatment for that, in addition to, understandably, being traumatized. [Dkt. # 50-9, Pars. 7-9]. In addition, she tells the court that she

is a single mother whose two daughters recently went off to college. [Dkt. # 52-2].

But, prior to all that, plaintiff's counsel still had about three weeks, from August 16th through "early September" to address her issues with defendants' purportedly unresponsive discovery responses. Had she proceeded apace when she had the opportunities, she may have avoided brushing up against the close of discovery – twice – with little to show for it. The Seventh Circuit has warned, time and again, that attorneys who wait until the last minute to handle their business "are playing with fire." *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015); *Calhoun v. Myatt*, 499 F. App'x 604, 606 (7th Cir. 2013); *Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 708 (7th Cir. 2002); *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir.1996). Mishaps may be unavoidable, but discovery lapses can be avoided or at least efficiently dealt with. That did not occur in this case or at least not to the degree to which it should have. Thus, a belated request for sanctions against the defendants is inappropriate,so long as the following accommodations are made and with no further delays or evasions.[2]

---

[2] Courts cannot make special rules for sole practitioners. *Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir. 2006). *See also G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *8 (N.D. Ill. 2016). Every accommodation outside the rules for one side, visits a corresponding unfairness upon the other. That episodic approach to the resolution of legal problems ultimately results in a regime of unpredictability. Even a Chancellor may not "succumb to the temptation to substitute his own 'incandescent conscience' for the will of the legislature." H. Shanks, The Art and Craft of Judging: The Decisions of Judge Learned Hand 13 (1968). Neither equity jurisdiction nor discovery jurisdiction is akin to a floating commission to do good or to remake the world. Nor is it a limitless fount of power which invests judges with unfettered discretion to decide cases in accordance with their private notions of justice. *Albermark Paper Co. v. Moody*, 422 U.S. 405, 407 (1975). Adherence to that form of individualized decision-making would ultimately result in a regime of personal preference and unpredictability of decision. *See* Cardozo, The Nature of the Judicial Process, 33-34, 68-69 (1921)(impartiality and adherence to precedent are critical).

It must be said that defendants have played *prima donna* roles in plaintiff's counsel's drama. Email wasn't good enough for them. Messrs. Gebka, Valez, and Findlay appear to be rather more busy and unavailable than even the President of the United States. But if he must give a timely deposition despite his obvious and undeniable importance and the equally undeniable busyness and importance of his schedule, *Clinton v. Jones*, 520 U.S. 681, 704 (1997); *United States v. Burr*, 25 F. Cas. 30 (No. 14,692d) (C.C.Va. 1807), it is not too much to ask that Messrs. Gebka, Valez and Findlay sit for their depositions. Indeed, they are neither so busy nor so important that they are excepted from the ancient and fundamental proposition of law. *United States v. Nixon*, 418 U.S. 683, 709 (1974)(it is an "ancient proposition of law" that "the public has a right to every man's evidence").

If plaintiff's counsel is accommodating enough to concede to depositions in Auburn Hills, Michigan, it is impermissibly harsh to expect her counsel to make two separate trips there. Why not the 14th and 15th, or the 15th and 16th? Defendants will have to choose more accommodating dates. The defendant has not exactly been a model of accommodation. And if the obduracy that has characterized the defendant's discovery conduct in this case is not traceable to it, that is traceable to the lawyers that have represented him. For example, Mr. Grebka demands to be deposed in Belvedere, Illinois, but as a party, he ought to be subject to plaintiff's choice of location, as long as it is within this district. That after all is what the law provides for. 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2112 (2010); *Gonzalez v. Scaletta*, 2018 WL 6573227, at *5 (N.D. Ill. Dec. 12, 2018); *DeGeer v. Gillis*, 2010 WL 3732132, at *1 (N.D. Ill. Sept. 17, 2010). There are not special rules for the defendant and his counsel. Accordingly, the deposition will proceed in Chicago as originally noticed by the plaintiff. *See Gonzalez v. Scaletta*, 2018 WL 6573227, at *5

(N.D. Ill. Dec. 12, 2018)("... courts have broad discretion in selecting the locale for a deposition."); *New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 466 (N.D. Ill. 2007)(same).

That leaves defendants' discovery responses. As for most of the responses plaintiff has an issue with, plaintiff carelessly directed her interrogatories or document requests to the wrong party of the responses at issue; *i.e.*, interrogatories and requests that were clearly for Mr. Gebka went to FCA, and *vice versa*. Plaintiff recreates this tack in her motion, making it difficult to parse her many grievances. All of defendants' objections on the basis of these many misdirected interrogatories and document requests are upheld, and plaintiff's motion to compel as to all those interrogatories and document requests is denied.

As for the remaining interrogatories, as already noted, many have supposedly been resolved. But, as we have noted, Plaintiff's counsel ultimately is responsible for having created needless work and expense by failing to inform the court. It's at least, and inefficient way to proceed, especially in the wake of having received numerous allowances from the court. [Dkt. ##23, 26, 38, 41]. Of course, courts have broad discretion in making discovery rulings. *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998); *King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017). Being a range, not a point, discretion allows two decision-makers—on virtually identical facts—to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996).

Plaintiff may not have deliberately taken advantage of the court's discretion in the past, indeed it is certain she did not intend to do that, but she certainly has been on the side that has benefitted from it. Given that, and the failure to inform the court of the resolution of nearly two dozen of the discovery issues she asked the court to resolve, plaintiff surely cannot expect discretion

to continue to tilt in her favor. *See, e.g., Am. Family Mut. Ins., Co. v. Roth*, 2008 WL 4876839, at *4 (N.D. Ill. Aug. 6, 2008); *Holland v. City of Chicago*, 2007 WL 3026628, at *2 (N.D. Ill. Oct. 15, 2007). Compare *Campbell v. Clarke*, 481 F.3d 967, 969 (7th Cir.2007).

**Interrogatory 1 to FCA**: Plaintiff asks FCA to identify *every* civil/administrative proceedings in which FCA has been involved in at *any* point for *any* reason. By any reckoning, that is exceedingly overly broad. This is a discrimination case. What possible relevance could, say, an OSHA violation have? In its initial and supplemental responses, FCA provided a list of the 16 agency claims, alleging age or race discrimination arising out of its Belvidere Assembly Plant since 2016 (when Mr. Gebka began working there). This list included the complainant's name, the date of the complaint, whether the complaint was based on race or age, and the status of the complaint with the agency. That answer is sufficient. Plaintiff's motion is denied.

**Interrogatory 3 to FCA and Mr. Gebka:**

Plaintiff's motion to compel as to Interrogatory Number 3 [Dkt. # 50-4, at 3] to Mr. Gebka is granted only as to as to full name, current address, telephone number, and date of birth. Ten years' worth of addresses is unnecessary and irrelevant, and there is no reason for Mr. Gebka to disclose sensitive, private information like a social security number. *See Slaughter v. Caidan Mgmt. Co.*, LLC, 317 F. Supp. 3d 981, 995 (N.D. Ill. 2018); *Blakes v. Ill. Bell Tel. Co.*, No. 11 CV 336, 2011 WL 2446598, *7 (N.D. Ill. June 15, 2011).

**Interrogatory 16 and 17 to Mr. Gebka:**

Interrogatory 16 is more properly directed to FCA, and therefore plaintiff's motion as to that interrogatory is denied. Interrogatory 17 asks for Mr. Gebka's enire employment history at FCA, from who interviewed him and told him and told him he was hired to the race of those individuals,

all his wage rates, all his supervisors, etc. [Dkt. #50-4, at 8]. This is overly broad and asks for information of no or dubious relevance. Plaintiff's motion is granted, but only as to Mr. Gebka's supervisors and job duties.

**Interrogatory 27 and 28 to Mr. Gebka**:

These interrogatories are directed to FCA, yet plaintiff insists, for some reason, that Mr. Gebka answer them as well. Mr. Gebka has directed plaintiff to FCA's response, thereby adopting the,. That is sufficient. Plaintiff's motion is denied.

**Document Requests to FCA**

Plaintiff's motion to compel documents responding to Request Number 1 to FCA is granted (but limited to period beginning August 2014 – two years prior to plaintiff's employment).

Plaintiff's motion to compel documents responding to Request Number 3 and Number 4 to FCA is granted.

Plaintiff's motion to compel documents responding to Request Number 5 to FCA is denied. *See, e.g., Smith v. Rosebud Farm, Inc.*, 2018 WL 4030591, at *6 (N.D. Ill. Aug. 23, 2018)(employees' immigration status not relevant in discrimination claim); *cf. Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 892 (N.D. Ill. 2013) ("While the Seventh Circuit has not addressed the issue, other courts in this district and elsewhere have uniformly found that the immigration status of a party is not a line of inquiry that is reasonably calculated to lead to the discovery of admissible evidence in action brought for unpaid wages under the FLSA because undocumented workers are not exempted from the definition of "employee" in the FLSA." (collecting cases)).

Plaintiff's motion to compel documents responding to Request Number 7 to FCA is denied as it requires defendant to speculate as to who might have been at the meeting.

Plaintiff's motion to compel documents responding to Request Number 8 to FCA is denied as the document has been produced.

Plaintiff's motion to compel documents responding to Request Number 9 to FCA is granted.

Plaintiff's motion to compel documents responding to Request Number 10 to FCA is denied as it appears to seek irrelevant information.

Plaintiff's motion to compel documents responding to Request Number 12 to FCA is denied as documents associated with pending legal claims are privileged.

Plaintiff's motion to compel documents responding to Requests Numbers 13, 14, 16 to FCA is granted. These are ordinary personnel records, including plaintiff's letter of resignation, that do not become protected by attorney client privilege merely because an attorney requests or reviews them. *See, e.g., Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 895 (N.D. Ill. 2018) ("Merely communicating with a lawyer or copying a lawyer on an otherwise non-privileged communication, will not transform the non-privileged communication or attachment into a privileged one, even if the otherwise non-privileged communication was at the behest of the lawyer."); *Bell Microproducts, Inc. v. Relational Funding Corp.*, 2002 WL 31133195, at *1 (N.D.Ill.2002)(instruction from an attorney to employees to copy him as a recipient on any emails or documents in order to assure attorney-client privilege was not by itself enough to make the document privileged). Any claim to the contrary is false and rejected. Given the consistent history of the attorney-client privilege and its construction, any objection to these requests were made in bad faith. No knowledgeable and reasonable attorney could have thought they would been sustained. On

**Document Requests to Mr. Gebka**

Plaintiff's motion to compel documents responding to Request Number 17 to FCA is denied.

Plaintiff's motion to compel documents responding to Requests Numbers 19, 20, 22 to FCA is denied as the documents have been produced.

Plaintiff's motion to compel documents responding to Request Number 24 to FCA is denied as the requested documents have been produced.

Plaintiff's motion to compel documents responding to Request Number 26 to FCA is denied; defendant clearly denies that it terminated plaintiff.

Plaintiff's motion to compel documents responding to Request Number 25 to FCA is granted in part and denied in part. As already indicated, it is plaintiff's burden to come up with similarly situated employees. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012). Defendant shall respond to the request without that limitation.

Plaintiff's motion to compel documents responding to Request Number 28 to FCA is denied as it calls for documents that were not part of regularly kept records, and were generated as a part of the preparation for this case, making them protected by the attorney-client privilege and/or by the work product doctrine.

Plaintiff's motion to compel documents as to Request Number 1 to Mr. Gebka is denied it overly broad and seeks irrelevant information.

Plaintiff's motion to compel documents as to Request Number 5 to Mr. Gebka is denied. *See, e.g., Smith v. Rosebud Farm, Inc.*, 2018 WL 4030591, at *6 (N.D. Ill. Aug. 23, 2018)(employees' immigration status not relevant in discrimination claim); *cf. Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 892 (N.D. Ill. 2013) ("While the Seventh Circuit has not addressed the issue, other courts in this district and elsewhere have uniformly found that the immigration status of a party is not a line of inquiry that is reasonably calculated to lead to the discovery of admissible evidence in action brought for unpaid wages under the FLSA because undocumented workers are not exempted from the definition of "employee" in the FLSA." (collecting cases)).

Plaintiff's motion to compel documents as to Request Number 21 to Mr. Gebka is denied as there are no responsive documents to be produced.

**Interrogatories to FCA**

Plaintiff's motion to compel answers to the following interrogatories to FCA is granted: Number 1, Number 10 (but limited to period beginning August 2014 – two years prior to plaintiff's employment, *see eg Craig v. Exxon Corp.*, No. 97 C 8936, 1998 WL 850812, at *1 n. 1(N.D. Ill. Dec. 2, 1998)(collecting cases)); Number 27.

Plaintiff's motion to compel as to Interrogatory Number 25 to FCA is granted in part and denied in part. It is plaintiff's burden to come up with similarly situated employees. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012). Defendant shall respond to the interrogatory without that limitation.

**Interrogatories to Mr. Gebka**

Plaintiff's motion to compel as to Interrogatory Number 1, which demands information as to every legal proceeding Mr. Gebka has been involved in, from traffic tickets on up the scale, is denied as it is clearly overly broad and seeks irrelevant information.

Plaintiff's motion to compel as to Interrogatory Number 3 to Mr. Gebka is granted only as to as to full name, current address, telephone number, and date of birth. Ten years' worth of addresses is unnecessary and irrelevant, and there is no reason for Mr. Gebka to disclose sensitive, private information like a social security number. *See Slaughter v. Caidan Mgmt. Co.*, LLC, 317 F. Supp. 3d 981, 995 (N.D. Ill. 2018); *Blakes v. Ill. Bell Tel. Co.*, No. 11 CV 336, 2011 WL 2446598, *7 (N.D. Ill. June 15, 2011).

Plaintiff's motion to compel as to Interrogatory Number 4 to Mr. Gebka is granted but limited to violent crimes.

Plaintiff's Interrogatory Number 5 to Mr. Grebka has been answered adequately; asking for his entire work history since high school is overly broad.

Plaintiff's Interrogatory Number 6 to Mr. Grebka, which appears to be of little relevance, has been answered adequately.

Plaintiff's motion to compel as to Interrogatory Number 21 to Mr. Grebka is granted but only as far back as 2016, when Mr. Gebka began working for FCA.

The above rulings are intended to be consistent with and augment those made in open court this morning.

**ENTERED:** _____
**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 10/17/19