**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE THE MATTER OF:<br><br>JARLON LINER,<br>Plaintiff,<br><br>v.<br><br>FCA US LLC, a/k/a FIAT CHRYSLER, AUTOMOBILES, a Delaware Corporation, and TOMASZ GEBKA, in his Individual Capacity,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 18 CV 06163<br><br>Judge Robert W. Gettleman<br><br>Maj Judge Jeffrey Cole |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff JARLON LINER, by counsel, hereby submits his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Defendants' Motion for Summary Judgment should be denied in its entirety because it is predicated on a serious misunderstanding of the law regarding adverse employment actions and the *prima facie* case requirements under Title VII. In addition, summary judgment is inappropriate at this stage of the litigation because material issues of disputed fact exist as discussed below and supported Plaintiff's Response to Defendants' Statement of Uncontroverted Facts and Plaintiff's Statement of Additional Uncontested Facts, all offered in opposition to Defendants' Motion for Summary Judgment, and each of which are attached hereto and incorporated herein,

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 1

# ARGUMENT

Defendants' Motion for Summary Judgment should be denied in its entirety because it is predicated on a serious misunderstanding of the law with regard to adverse employment actions and the *prima facie* case requirements under Title VII.

## I. Standard of Review

Summary judgment is only appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Bonds v. Heyman*, 950 U.S. 1202 (D.D.C. 1997). In addition, the Court "may not make credibility determinations or weigh the evidence." *Reeves. v. Sanderson Plumbing Products*, Inc., 530 U.S. 133, 150 (2000). In this case, it is clear the material facts are disputed, as indicated above and also incorporated below.

## II. Mr. Liner made a *prima facie* case of race discrimination and the burden is on Defendants to show a nondiscriminatory reason for his constructive discharge.

Mr. Liner's *prima facie* case demonstrated all four elements of race discrimination under *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th. Cir. 2003). He is a black male, which puts him in a protected class under Title VII. He performed his job according to Defendants' legitimate expectations; Mr. Findlay and Mr. Gebka both testified that even a "4" average on a PLM is fine with the company, and other employees who scored lower were offered to continue working without any performance plans (Plaintiff's SOF #34; Findlay Depo. 68:6-11; Doc 90 p.

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 2

559; Doc. 91 p. 713). Mr. Liner's constructive discharge is an "adverse employment action." A similarly situated white male with lower scores was given a permanent position at a new location while Mr. Liner was only offered a temporary position with a vague future option of applying to hypothetical open positions down the road; Mr. Liner was the only black IE and the only IE who was given additional objectives *during* his review coupled with a request to lower his score. These facts are not only asserted by Mr. Liner, but have been substantiated through Defendants' representatives' testimony, Defendants' Interrogatory responses, and Defendants' own Statement. (*See generally "Statement of Facts"*). Therefore, the burden shifted to Defendants to provide evidence of a legitimate, non-discriminatory reason for its actions. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

**A. Mr. Liner is in a protected class.**

Mr. Liner is a black male in his 40s and meets the criteria for membership in a protected class. This is uncontested by Defendants. (Def. Memo, p. 4).

**B. Mr. Liner performed his job better than an average IE Manager, according to Defendants' own representatives' testimony.**

Defendants attempt to persuade this court in their memo that Mr. Liner did not perform his job duties and responsibilities according to expectations. However, their own representatives' testimony indicates otherwise. Although Defendants' Memo claims Mr. Liner "failed to meet Defendants' legitimate expectations for an IE Manager," Mr. Findlay testified that Mr. Liner's scores were average for an IE manager and were acceptable, and that 4's do not require an employee to be placed on a performance improvement plan. (Findlay Depo. ¶ 68:6-11). "[A]ctually Mr. Liner's score of 4 indicates that his performance was adequate to what the company was expecting." (Gebka Depo. ¶ 160:12-15). Interestingly, Defendants later claim that

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 3

there is no one in their entire organization similarly situated to Mr. Liner, but here they assert they have average standards for all IE Managers with which they have compared Mr. Liner's performance, and they do indeed have an "average" IE Manager score. (SOF 47)

**C. Mr. Liner experienced an adverse employment action.**

In Defendants' Memo, they argue that a resignation is not an "adverse employment action," but courts disagree. "Constructive discharge, like actual discharge, is a materially adverse employment action. *See E.E.O.C. v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002)." *Duncan v. Thorek Mem'l Hosp.*, 784 F. Supp. 2d 910, 921 (N.D. Ill. 2011). The *Duncan* court gives two examples: either the working conditions are unbearable from a reasonable employee's standpoint, or, as in Mr. Liner's situation, "when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff-employee resigns, the employer's conduct may amount to constructive discharge." *Id*. at 922. The *Duncan* court relies on *Univ. of Chi. Hosps.*, 276 F.3d at 332; *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir.1998) ("Constructive discharge exists to give Title VII protection to a plaintiff who decides to quit rather than wait around to be fired.").

Here, Mr. Liner was told his position was already being filled at his current plant *while he was still in that position*, and that his only other option was a short-term coverage of another employee's leave at another plant, which effectively was Defendants' way of letting him know he was essentially hanging around, waiting to be fired once the other employee returned. (Plaintiff's SOF 10-11)

**D. Mr. Liner was treated differently than similarly situated white employees.**

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 4

Defendants admitted Mr. Liner's situation regarding these employment "options" were not the same as the options given to other employees when they pointed to a similarly situated white employee who scored lower than Mr. Liner on his PLM and was given an option of a permanent relocation position. Also, Mr. Velez testified that, for him personally, a white male, when he mentioned his desire to move to a different location, Defendants waited until he had a secure position before filling his old one. In Mr. Liner's case, when he mentioned his desire to move to a different location, Defendants actively worked to fill his position before Mr. Liner took steps to apply to relocate instead of waiting until he had a secure position like his white counterpart, Mr. Velez. (Valez Dep 65:24-66:10).

When it came time to review Mr. Liner and draft his PLM, Defendants "compar[ed] him to other IE Managers outside of Belvidere…" (Def. Memo p. 9). And "all of the IE managers with whom Liner worked…indicated that Liner has shown great improvement, and they believed he could be successful as an IE Manager." (Gebka Depo. ¶ 177:17-178:2, *excerpt from Vicki Patterson's report*.) Further, there is an IE Department that is the same overseer of all IE Managers, regardless of plant manager. (Findlay Depo. ¶ 54:13-17, stating there is a company IE department). Jeff Davis is the IE Assembly Manager who conducts PLMs for IE Managers. (Def. Statement: Doc. 90-2, p. 639; Doc. 90-2, p. 643; Findlay Depo. ¶ 60:9-20). All IE Managers have the same overarching job description, although deliverables can vary based on launches, and PLMs are drafted by corporate and employee reviews are conducted by corporate, not by the individual plant managers.

However, when it comes to this matter, Defendants suddenly assert that the IE Managers at other plants can't be compared to Mr. Liner because they have different staff, different

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 5

launches, and different plant managers. Therefore, Defendants try to set the bar higher than the court, and its own internal review process, to attempt to thwart the definition of "similarly situated." If Defendants' definition was true, "similarly situated" would mean the employee would have to be located at the same plant, have the same hours, somehow be working on the same launch, and somehow have the same plant staff. This is impossible, but it is not fatal, because this definition is not in line with the courts' definition of "similarly situated."

Courts define "similarly situated" as having the same supervisor, subject to the same standards, and engaged in similar conduct. *Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014). Here, the same corporate supervisors do the performance reviews and PLMs for all seven IE Managers, Mr. Liner was compared to the other IE Managers when evaluated, and Mr. Liner's scores were average/on par with other IE Managers and the company's expectations. The *Orton-Bell* court found that, although in different branches of the chain of command, the plaintiff and the similarly situated employee were both fired by the same supervisor for the same conduct and held to the same standards. *Id*.

Further, to establish whether an employee is similarly situated to another, the threshold is if they are *comparable* but not *identical*. *Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005) ("[T]he other employees must have engaged in similar-not identical-conduct to qualify as similarly situated."). The relevant factors "depend[ ] on the context of the case." *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). The purpose of this element "is to eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Succinctly put,

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 6

"[a]ll things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008). Therefore, "[s]ummary judgment is appropriate **only** when no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009).

The only substantial difference between the other IE Managers and Mr. Liner is that Mr. Liner is black. Mr. Liner's 4 rating was enough to be constructively discharged even though it was considered an average rating for other IE Managers, and Mr. Liner was the only IE Manager to have his plant manager attempt to force new criteria on him during a PLM review in order to push for a lower score.

Because Mr. Liner made a *prima facie* case of race discrimination, the burden shifted to Defendants to show a nondiscriminatory reason for his constructive discharge.

**III. Defendants prove their reasons are pretextual with explanation shifting.**

Defendants' asserted reasons for their actions with regard to Mr. Liner are pretextual, which is fatal to their defense. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The Supreme Court held in *McDonnell Douglas* that pretext is "evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." *Id*. at 804-05.

Courts have held that shifting explanations are enough to show pretext, and that "a jury could find Defendant's shifting explanations unworthy of credence and infer Defendant's decision to discharge was motivated by discriminatory bias." *Tabb v. Nat'l Ry. Equip. Co.*, No. 414CV04037SLDJEH, 2016 WL 9753964, at *5 (C.D. Ill. Mar. 31, 2016); *N.L.R.B. v. Henry*

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 7

*Colder Co.*, 907 F.2d 765, 769 (7th Cir. 1990) (holding that "Shifting explanations for discharge may, in and of themselves, provide evidence of unlawful motivation.") In a Seventh Circuit case where the district court granted summary judgment, the Seventh Circuit reversed on a race discrimination claim because the agency "offered shifting explanations" for why an applicant was chosen and other relevant facts. *Henderson v. Shulkin*, 720 F. App'x. 776, 783 (7th Cir. 2017).

In *Tabb*, the defendant's explanation of his discharge changed over time. Analogous to Defendants' reasons regarding Mr. Liner in this instant matter, the *Tabb* court noted its defendant's reasons for its actions toward the plaintiff varied from interrogatory answers to depositions to summary judgment arguments. In *Tabb*, the court held that the court is "tasked with assessing whether a plaintiff has presented sufficient evidence from which a reasonable jury could find the employer engaged in conduct that violates Title VII." *Id*. at *7. Because there were two employees who behaved similarly and the black employee was discharged while the white employee was suspended, "together with evidence of Defendant's shifting explanations for its conduct, give rise to an inference that the disparate treatment is a result of discriminatory bias." *Id*.

Mr. Liner, a black male, received marks on his PLM that Defendants' representatives testified were average and acceptable and not worthy of a PIP, and Mr. Carson, a white male, received substantially lower marks. Mr. Carson was allowed to relocate to a permanent position without a PIP plan; Mr. Liner was given the option of a temporary position that would ultimately end with no guarantee of a future job option only, and his current position was already being filled when he was given the "option." Defendants' definition of whether or not Mr. Liner's

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 8

scores were low, whether or not Mr. Gebka had input into the decision, reasons for hiring a white employee to replace Mr. Liner who had no experience and did not fit the minimum educational requirements, are all evidence of "shifting explanations" that could cause a trier of fact to infer Defendants' reasons for constructive discharge were racially motivated. Thus, Defendants' summary judgment motion should be denied.

**IV. Mr. Liner made a *prima facie* case of retaliation.**

Defendants incorrectly allege that the criteria for a *prima facie* case of retaliation is the same as race discrimination (Def. Memo, p. 10). The actual criteria to establish a *prima facie* case of retaliation under Title VII is a showing that a plaintiff engaged in a protected activity, that there was an adverse employment action, and that a causal link exists between the two. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (footnote and citation omitted); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (citing *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998). The establishment of a *prima facie* case gives rise to an inference of retaliation. *Montemayor*, 276 F.3d at 692. This inference, in turn, shifts the burden of proof to the defendant, who must then articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment action. *McCoy*, 492 F.3d at 557. Once a defendant asserts such a reason, the inference of retaliation raised by the *prima facie* showing drops from the case. *Montemayor*, 276 F.3d at 692.

In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the antiretaliation provision, unlike the substantive provision,

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 9

is not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. 53, 64 (2006). Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citation omitted). In so ruling, the Court rejected Fifth Circuit authority, *Id.* at 67, which defined adverse employment actions as "ultimate employment decisions" and limited actionable retaliatory conduct to acts "such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 61 (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)).

As indicated above, Mr. Liner filed a complaint against Mr. Gebka for assault and battery, Mr. Liner was constructively discharged, and there is a causal link between the two. Mr. Liner's email, as well as Mr. Findlay's deposition testimony, both confirm that Mr. Liner brought up retaliation as the reason he was not afforded the same relocation option as another employee with a much lower PLM rating. It was also brought up as the reason why Mr. Gebka wanted to sit in on Mr. Liner's performance review specifically and adjust his numbers based on three new criteria which would lower his score to 4, which was even lower than the score corporate assigned to Mr. Liner. Further, Mr. Liner's email indicated he believed the retaliation of receiving different variables in his PLM than similarly situated IE Managers was "direct racial discrimination" and that the options—which are not really options since neither were viable—were given in direct retaliation and punishment for reporting Mr. Gebka's assault and battery. Again, as referenced above, the last line of the email reads, "The fact that I am being forced out and replaced is racially motivated and retaliatory." (Doc. 90-2, Pl.'s Ex. 8, *email from Mr.*

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 10

*Liner*). Quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006), Defendants allege that Mr. Liner must "specifically indicate the discrimination was due to the plaintiff's protected class" while simultaneously attaching Mr. Liner's email to its Memo.

In an attempt to show its decisions were "legitimate," Defendants only point to the decision to give Mr. Liner a 4 for his 2017 PLM and call it "appropriate and reasonable." (Def. Memo. p. 12). This, of course, ignores all the surrounding evidence that makes it pretextual: a 4 is an average IE Manager score unless it belongs to Mr. Liner, the only black IE Manager; Defendants have stated that a 4 is both average *and* sub-par in conflicting and shifting explanations throughout this case; Mr. Gebka attempted to infiltrate Mr. Liner's PLM meeting with his supervisor to interject additional criteria and lower his score; Mr. Liner was not given the same options for relocation as other similarly situated white employees; Mr. Gebka's actions occurred after Mr. Liner reported him for assault and battery. Thus, Defendants' summary judgment motion should be denied.

**V. The negligent supervision claim is sufficient to withstand summary judgment.**

To state a cause of action for negligent supervision under Illinois law, plaintiff must establish that: (1) her employer had a duty to supervise its employees; (2) employer negligently supervised an employee; and (3) negligence proximately caused the plaintiff's injuries. *Finnane v Pentel of America, Ltd,* 43 F.Supp.2d 891 (7th Cir. 1999).

The facts herein state a claim for negligent supervision. Gebka was an employee of FCA and as such FCA had a duty to supervise Gebka. FCA failed to properly supervise Gebka because Liner was at least the third employee that Gebka had struck or placed his hands on. Rather than discipline Gebka, FCA chose to counsel Gebka and advise he should keep his hands

off the other employees, notwithstanding Gebka's action were clearly an unwanted touching and violation of the FCA US Policy 3-6. FCA's negligence in failing to supervise Gebka to prevent him from putting his hands on Liner was the proximate cause of Plaintiff's injuries, including his humiliation, harassment, altered performance review score, and eventual constructive termination.

Defendants argue that the negligent supervision claim fails because it is linked to the discriminatory and retaliatory treatment he received. However, Mr. Liner has not only met the criteria for his *prima facie* case in both the Title VII racial discrimination and the retaliation claim, but he has also shown pretext for the defenses Defendants offer regarding Mr. Liner's treatment. Where a claim of intentional discrimination is brought, the Seventh Circuit has directed courts to apply the same standards of proof as those used under Title VII. *Steinhauer v. Degalier*, 359 F.3d 481, 483 (7th Cir. 2004). As such, the negligent supervision claim also withstands summary judgment for the reasons indicated above, and this court should therefore deny summary judgment.

## VI. The assault and battery claim is sufficient to withstand summary judgment.

Defendants attempt some linguistic gymnastics when attempting to persuade this court that Mr. Gebka's assault and battery on Mr. Liner was not actually battery. Mr. Gebka struck Mr. Liner in the chest. Mr. Liner was so upset he left work that day *and* reported it to HR the very next day. Even Defendants' own representative, Mr. Velez, witnessed it and, although he was reluctant to testify about it, did indeed agree that there was unwanted touching related to anger over Mr. Liner's management of the team in Italy. All of Defendants' representatives who have testified via deposition so far; to wit, Mr. Velez, Mr. Findlay, and Mr. Gebka, agree that the

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 12

company has a harassment policy, Policy 3-6, which includes unwelcome physical contact that makes another feel uncomfortable or in a way that was discriminatory, and that Mr. Gebka did initiate unwelcome physical contact with Mr. Liner. Mr. Gebka also stated that he was not reprimanded for it, just "coached." (Velez Depo. ¶ 51:2-18; Findlay Depo. ¶ 25:12-26:13; Gebka Depo. 74:1-75:17 and 173:20-175:15).

720 ILCS 5/12-3 states that a person commits battery if he knowingly without legal justification by any means…makes physical contact of an insulting or provoking nature with an individual. 720 ILCS 5/12-1 states that a person commits an assault when, without lawful authority, he knowingly engages in conduct which places another in reasonable apprehension of receiving a battery. Based on testimony from Defendants' own representatives and based on Mr. Liner's testimony and report and subsequent email to HR, there is ample evidence for a trier of fact to consider Mr. Gebka's actions toward Mr. Liner fall under these statutory definitions. Moreover, in Defendants' own Memo they admit that battery is "unauthorized touching of another that offends a reasonable sense of personal dignity." (Citing *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008)).

Here, Mr. Liner clearly did not authorize Mr. Gebka to touch him at all, let alone strike his chest or shake his shoulders. Both Mr. Liner and Mr. Velez agree that the action was directly related to Mr. Gebka's anger over a belief that Mr. Liner did not manage certain employees well in Italy. Mr. Liner was so upset he left work, and the very next day reported the interaction to HR. This evidence could lead a reasonable jury to believe there was unwanted touching, and that it offended Mr. Liner's reasonable sense of personal dignity. He was physically assaulted (battery) and humiliated based on Mr. Gebka's assumption that he mismanaged a team he in fact

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 13

did not lead, in front of his entire work family. Defendants' contention that Mr. Velez's speculation that Mr. Liner was not upset would not be presented to the trier of fact as it is inadmissible hearsay evidence based in speculation and is also in direct conflict with Mr. Liner's immediate actions of leaving work and then reporting to HR the next day. As such, there is evidence to support Mr. Liner's claim, and there are disputed facts that are material to this claim that are appropriate for a trier of fact, and Defendants' summary judgment motion should be denied.

Defendants further allege that, by not reporting the battery to the police on his way home, or by not seeking medical treatment afterward, Mr. Liner's claim should fail. There is no basis for this argument. In fact, Illinois courts have held that even waiting a week after a sexual assault to report a claim to police is not evidence that the assault was not valid or any less credible, nor was the plaintiff's behavior directly afterward that others perceived as not indicative of having just been assaulted. *People v. Guerrero*, 2011 IL App (2d) 090972, ¶ 89, 953 N.E.2d 936, 956. This is in direct contrast to the claims Defendants raise in their Memo regarding Mr. Velez's perception of Mr. Liner's behavior immediately afterward, and Mr. Liner's decision to report the battery to HR the following morning rather than that afternoon.

The exclusivity provision of the IHRA provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction on the subject of an alleged civil rights violation other than set forth in [the] Act." 775 ILCS 5/8–111(C). This jurisdictional restriction includes any state claims that are "inextricably linked" to … harassment claims. *Geise v. Phoenix Co. of Chicago,* 159 Ill.2d 507, 203 Ill. Dec. 454, 639 N.E.2d 1273, 1277 (1994)

This aggressive and hostile approach of Liner by Gebka, separate and apart from the civil

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 14

rights violation, gives rise to an independent claim for the intentional tort of assault.

An **assault** is the tort of acting intentionally, that is with either general or specific intent, causing the reasonable apprehension of an immediate harmful or offensive contact. Actual ability to carry out the apprehended contact is not required.

In *Maksimovic v Tsogalia*, 177 Ill.2d 511, 227 Ill.Dec. 98, 687 N.E. 2d (1997) the Supreme Court revisited the issue of the exclusiveness of the IHRA. Plaintiff Maksimovic filed an action in state court against her employer/manager, alleging that he committed intentional torts of assault, battery and false imprisonment against her. *Maksimovic* clarifies what is necessary to avoid the exclusivity provision. The issue is whether there is a separate theory of redress available to the plaintiff based on duties that are not prescribed by the IHRA. The critical inquiry is whether Plaintiff can establish a basis of liability against Gebka and FCA that is independent of the IDHR.

Suffice it to say, Gebka's attitude, accompanied by his aggressive and intentional physical actions, were intended to intimidate Liner, placed Liner in apprehension that Gebka might strike him again or otherwise attempt to do him harm. This activity was not "inextricably linked" to the racial harassment claims, and therefore does not render the claims for negligent supervision and assault and battery preempted by the IDHR and subject to summary judgment.

## VII. All the above points show disputes over material facts which is fatal to Defendants' summary judgment motion.

As there are ample material facts addressed above that, after some discovery and some depositions are still reasonably in dispute, Mr. Liner prays this court deny Defendants' motion and accordingly set this matter for trial.

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 15

WHEREFORE, Plaintiff JARLON LINER respectfully requests this Honorable Court deny Defendants' Motion for Summary Judgment.

                          Respectfully submitted,

                          JARLON LINER

                          By:/ Calvita J. Frederick
                          Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
Attorney ID # 6184001
calvita.frederick@att.net

Liner v. FCA US LLC et. al. | Case No.: 18 CV 06163
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment
Page 16