IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JARLON LINER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No: 18-CV-06163 |
| v. ) | |
| ) | |
| FCA US LLC, a/k/a FIAT CHRYSLER ) | Judge Robert W. Gettleman |
| AUTOMOBILES, a Delaware Corporation, and ) | Magistrate Judge Jeffrey Cole |
| TOMASZ GEBKA, in his Individual Capacity, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants FCA US LLC ("Defendant FCA") and Tomasz Gebka ("Defendant Gebka") (collectively "Defendants") submit the following Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment.

**I.   REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS**

**A.  Facts Plaintiff specifically admitted as uncontroverted.**

Plaintiff expressly admitted 21 of Defendants' Statements of Fact are undisputed.[1] They establish, among other things, that it is uncontroverted Plaintiff did not suffer a materially adverse employment action with respect to the alleged instances of discrimination or retaliation because: (i) Defendant Gebka proposed an overall higher rating for Plaintiff on his 2017 PLM than the score he received from Jeff Davis (Dfnt. SOF 58); (ii) nowhere in the 2017 PLM score that Plaintiff received were the additional objectives Defendant Gebka discussed during the meeting to discuss the score (Dfnt. SOF 65); (iii) Plaintiff admitted he has no evidence that his age impacted his 2017 PLM score (Dfnt. SOF 68); and (iv) Davis – who assessed Plaintiff's performance and alone prepared his 2017 PLM – was not racist and did not consider Plaintiff's race, age, or his complaint regarding the May 2017 Incident into account when preparing his 2017 PLM (Dfnt. SOF 51-52).

---

[1] These are SOF 4-5, 8, 13-15, 22, 26-27, 30-32, 46, 49, 51-52, 58, 65, 68, and 74-75.

It is also uncontroverted that Plaintiff received an employment offer from Wabash National in February 2018 that would have compensated Plaintiff more than what he received during his employment with Defendant FCA, and he did not turn down that offer until March 2018. (Dfnt. SOF 74-75). Further, it is uncontroverted Plaintiff did not suffer an assault or battery claim because he suffered no physical injuries as a result of the incident and, instead, left the Plant early, bypassed every opportunity to report the incident to local authorities or a medical professional, and simply went home. (Dfnt. SOF 31-32).

  **B. Many of the remaining statement of facts Defendant set forth are uncontroverted because Plaintiff failed to cite to anything in the record actually controverting those facts.**

The Local Rules of the Northern District of Illinois establish the requirements for opposing a motion for summary judgment. Where the moving party provides statements of material facts, the opposing party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). <u>If the opposing party fails to controvert the offered statement of facts as dictated in the Local Rule, the movant's offered statements of fact are deemed uncontroverted and admitted</u>. *Id*. (emphasis added).

In response to 36 of the Defendant's Statement of Facts, Plaintiff initially admitted the statement but subsequently attempted to "dispute" part of the same statement.[2] In doing so, however, Plaintiff did not address or controvert the asserted statement of fact. For example, Defendants stated the following uncontroverted material fact in Dfnt. SOF 9:

> Defendant Gebka became the Plant Manager for the Plant in July 2016 and remained in that position for the duration of Plaintiff's employment with Defendant FCA. As the Plant Manager, Defendant Gebka was responsible for the entire operation of the Plant. (Defendant Gebka Deposition, ¶ 34:7-24).

In response, Plaintiff attempted to partially dispute this statement and provided the following:

> Agreed as to Mr. Gebka's title only; he did not manage the IE Manager position. See #6.

---

[2] These are SOF 1-3, 6-7, 9-10, 12, 16, 28, 48, 50, 53, 59, 62-64, 69, 71, 73, 76, and 78-79.

This response, however, does not comply with Local Rule 56.1 in that it fails to controvert the asserted fact. With these types of responses, Plaintiff cites to nothing in the record that addresses the substance of the asserted fact or otherwise controverts it. This is, of course, impermissible. *See Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Instead, Plaintiff merely points to additional facts that go well beyond what is deemed a permissible denial of the offered facts. *See Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809 (7th Cir. 2005) (collecting cases); *Midwest Imports v. Coval*, 71 F.3d 1311, 1316-1317 (7th Cir. 1995). Thus, under this Court's rules these facts remain uncontroverted and this Court must accept the facts Defendants set forth as true and uncontroverted.

Similarly, Plaintiff attempted to controvert 22 statements of fact by including improper arguments and attempting to include a different version of events instead of controverting the offered statement of fact.[3] For example, Defendants stated the following uncontroverted material fact in Dfnt. SOF 33:

> Plaintiff admitted he did not report the May 2017 Incident to local law enforcement or file a police report, including the Belvidere Police Department located three (3) miles away from the Plant. Nothing prevented him from doing so. (Plaintiff Deposition, ¶ 155:18-156:11).

In response, Plaintiff appears to attempt to controvert this statement by stating the following:

> This statement is misleading. Although Mr. Liner did not report the incident to the police, he did report to HR that Mr. Gebka assaulted him and shoved him in his chest, asserting it was an assault and battery and as an act of discrimination. (Compl. ¶ 22-24; Velez Depo. ¶ 39:22-40:6). As Defendants admitted in #32 above, Mr. Liner was so upset over the attack that he left work right after it happened. (Comp. ¶ 23; Def. Statement ¶ 31). Mr. Liner also called Mr. Davis that evening to report it to him. (Liner Depo. ¶ 145:24-146:12). As a Black man in the Rockford-Belvidere area Liner knew the police would come to the plant and talk to the plant manager, the person who assaulted him. Liner feared that Gebka would skew the facts and that he, as is often the case, would end up in jail or worse. (Liner dep 327-329).

Such an evasive response is seen throughout Plaintiff's remaining responses to Defendant's statements of fact and fails to comply with Local Rule 56.1. Not only does Plaintiff's response fail to specifically controvert the statement asserted in Dfnt. SOF 33 through any citations in the record, but it also contains

---

[3] These are SOF 11, 17-21, 23-25, 29, 33-45, 47, 54-55, 57, 60-61, 66-67, 70, 72, and 77. Plaintiff also failed to cite to anything in the record in his attempt to dispute SOF 56.

3

impermissible arguments that do not identify the facts requiring a resolution at trial. *See, e.g., Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528-29 (7th Cir. 2020) (finding the non-moving party's response to the statement of facts failed to actually dispute such facts where it merely presented a different version of events and did so with impermissible arguments and unsupported by the record).

Further, Plaintiff cannot now attempt to deny a matter he expressly admitted during his deposition. *See Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). Under the relevant rules, the salient issue is whether there is evidence in the record controverting the statement of fact, not whether Plaintiff simply disagrees with the fact. *Id*. The repeated inclusion of arguments in Plaintiff's response to the statements of fact are improper and those facts remain uncontroverted. As a result, this Court may accept the facts Defendants set forth as true.

These facts, among other things, establish it is uncontroverted that Plaintiff did not suffer a materially adverse employment action with respect to the alleged instances of discrimination or retaliation. These facts also demonstrate Plaintiff voluntarily resigned from his employment in July 2018 and, in doing so, made no reference to any belief that he was constructively discharged or that he was leaving due to discrimination based on his race, color, or age or otherwise because he was subjected to retaliation during his employment. (Dfnt. SOF 23-25, 76-77).

There is also no genuine dispute that Davis authored and finalized Plaintiff's 2017 PLM, and Davis alone established the goals set forth in the 2017 PLM. Defendant Gebka was not part of any meeting discussing Plaintiff's 2017 PLM prior to Davis preparing it. (Dfnt. SOF 54-55). Davis rated Plaintiff as medium in five (5) categories and low in five (5) categories, and Plaintiff took no issue with receiving medium ratings in the categories on his 2017 PLM. (Dfnt. SOF 50, 59, 62). It is similarly uncontroverted that Defendant Gebka's assessment of Plaintiff's performance and proposed 2017 PLM score was **higher** than what Davis determined Plaintiff would receive. (Dfnt. SOF 60-61).

Further, it is uncontroverted that Defendant Gebka sitting in on the meeting to discuss Plaintiff's 2017 PLM and discussing three (3) additional objectives did not change or modify Plaintiff's score. Nowhere in the 2017 PLM Plaintiff received and reviewed with Davis are the additional objectives

4

Defendant Gebka mentioned. That is because Plaintiff's 2017 PLM was written and scored <u>before</u> this meeting. (Dfnt. SOF 63-64, 66). Moreover, it is uncontroverted that Defendant FCA did not post Plaintiff's position to begin interviewing candidates until after Plaintiff voiced his desire to relocate closer to his resident in Indiana. (Dfnt. SOF 69).

It is also uncontroverted that Plaintiff did not perform his job duties and responsibilities according to Defendant FCA's legitimate expectations. Davis determined Plaintiff's 2017 PLM score after Plaintiff failed to perform his duties to Defendant FCA's satisfaction during the launch and after Defendants provided Plaintiff with a personal mentor to assist him in meeting the requirements of his job. Despite this and Defendant Gebka and others in upper management repeatedly counseling Plaintiff on the importance of the data he provided, it is uncontroverted that Plaintiff could not meet the basic and fundamental requirements of his job. (Dfnt. SOF 6-7, 10-12, 17-20).

Additionally, it is uncontroverted that Defendants did not treat Plaintiff less favorably than similarly situated employees. There is no genuine dispute that Plaintiff is not similarly situated to any other IE Managers employment with Defendant FCA. Even so, Defendant FCA treated Plaintiff on par with its White, management-level employees when discussing whether to issue a Performance Improvement Plan, something Defendant FCA never delivered to Plaintiff. (Dfnt. SOF 53, 70-73).

Finally, it is uncontroverted Plaintiff did not suffer an assault or battery. It is uncontroverted that Plaintiff did not report the incident to local law enforcement or file a police report, including with the Belvidere Police Department located mere miles from the Plant. Neither did Plaintiff report the incident to the on-duty nurse at the Plant nor seek medical attention, including from the Swedish Medical Center located less than one mile from the Plant. Additionally, at no point following the incident did Plaintiff seek or otherwise obtain counseling from a psychologist, psychiatrist, or other mental health professional as a result of the incident. (Dfnt. SOF 33-37).

## II. RESPONSE TO PLAINTIFF'S ADDITIONAL STATEMENTS OF FACTS

Defendants incorporate by reference and as fully set forth herein their Response to Plaintiff's Additional Statement of Uncontroverted Facts, filed contemporaneously with this Reply.

### III. ARGUMENTS AND AUTHORITIES

#### A. Plaintiff Fails to Establish a Prima Facie Case of Age Discrimination.

Plaintiff offers no response to Defendants' arguments that he cannot make a prima facie claim for age discrimination and appears to concede this point. To make such a showing, Plaintiff must establish his age was the but-for cause of the employment decision. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009); *Strychalski v. Baxter Healthcare Corp.*, 2015 WL 738673, at *3 (N.D. Ill. Feb. 18, 2015). Plaintiff has not demonstrated or otherwise argued any alleged adverse employment actions would not have occurred but for his age. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment makes no arguments regarding any alleged age discrimination. Thus, Defendants are entitled to summary judgment as a matter of law.

#### B. Plaintiff Fails to Establish a Prima Facie Case of Race Discrimination.

As discussed in Defendants' Memorandum in Support of Summary Judgment (Dkt. 91), establishing a prima facie case of race discrimination requires a plaintiff to demonstrate they performed their job according to their employer's legitimate expectations, they suffered an adverse employment action, and they were treated less favorably than similarly situated employees outside their protected class. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th. Cir. 2003); *Moran v. Transport Workers Union of America*, 2015 WL 3814934, at *5 (N.D. Ill. June 17, 2015). Plaintiff has failed to make this showing.

First, Plaintiff has offered no evidence demonstrating he performed his job duties and responsibilities according to Defendants' legitimate expectations. Plaintiff appears to suggest he performed his job duties better than an average IE Manager. He does so, however, without providing any supporting evidence and, instead, simply relies on a purely speculative assertion.[4] The uncontroverted facts establish

---

[4] Plaintiff appears to suggest (at 2-3) that William Findlay and Defendant Gebka testified Plaintiff's receipt of a "4" on his 2017 PLM demonstrated he performed his job duties adequately and such a score should have barred Plaintiff from receiving a Performance Improvement Plan ("PIP"). This is inaccurate. Mr. Findlay testified a "4" rating did not require an employee to be placed on a PIP but noted such an employee could receive a PIP if they had a pattern of performance issues that needed to be addressed. He did not, however, testify or otherwise imply Plaintiff adequately performed his job as expected. [Findlay Deposition, 68:6-69:3]. Similarly, Defendant Gebka offered no such testimony and, instead, testified there were gaps in Plaintiff's performance, including his demonstrated inability to lead the IE

6

Plaintiff consistently struggled with providing accurate manpower numbers when asked to do so and routinely gave information that both his mentors and colleagues advised had mistakes and inconsistencies. This was, of course, not only an integral component of Plaintiff's job but also integral to both these specific launches and the overall success of the Belvidere plant. (Dfnt. SOF 10-11, 17-19). Despite knowing this and receiving repeated counseling and a personal mentor, the uncontroverted facts demonstrate Plaintiff simply could not meet the basic and fundamental requirements of his job. (Dfnt. SOF 19-20).

Second, and despite any attempted assertion to the contrary, the uncontroverted material facts demonstrate Plaintiff suffered no adverse employment action. In an attempt to suggest otherwise, Plaintiff opines he was constructively discharged. This is unsupported by the uncontroverted facts. The definition of an adverse employment action is generous but is not without limitations. *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). To establish an adverse employment action, a plaintiff must demonstrate a quantitative or qualitative change in the terms and conditions of their employment that is more than a mere subjective preference. *Id*.

Even with this generous standard, the uncontroverted facts demonstrate Plaintiff suffered no quantitative or qualitative change in the terms and conditions of his employment with Defendant FCA. At no point prior to his voluntary resignation did Plaintiff receive any reduction in pay, change to his compensation, or change to the conditions of his employment. (Dfnt. SOF 4, 25). In fact, he suffered no change to his employment. Moreover, Defendants did not signal to Plaintiff that he would be discharged. (Dfnt. SOF 25). In fact, it is quite the opposite, as the uncontroverted facts establish that Defendant FCA provided mentors to assist and coach Plaintiff (Dfnt. SOF 6-7).

Plaintiff advances the purely speculative notion that Defendant FCA began to replace him as the IE Manager while he still occupied the position. This is inaccurate. Following Plaintiff's poor performance during the launch, <u>he</u> voiced his desires to continue his employment with Defendant FCA but he wanted to relocate closer to his residence in Indiana. (Dfnt. SOF 69). Only <u>after</u> Plaintiff voiced his intent to leave the

---

team in providing accurate manpower numbers. [Defendant Gebka Deposition, ¶ 50:11-18, 148:8-149:5; Plaintiff Deposition, ¶ 84:22-85:12, 86:10-87:5, 96:22-97:12, 98:5-18].

Plant did Defendant FCA post his position to begin the interview process. Importantly, Defendant did not fill Plaintiff's position until <u>after</u> his voluntary resignation from Defendant FCA. (Dfnt. SOF 79). Thus, a reasonable factfinder will not conclude – and the uncontroverted, material facts do not suggest – Plaintiff suffered any adverse employment action.

Finally, the uncontroverted material facts demonstrate Defendants did not treat Plaintiff less favorably than similarly situated employees.[5] Plaintiff again advances speculative and conclusory arguments in an attempt to suggest Defendants treated him differently than similarly situated employees. In assessing whether individuals are similarly situated, courts focus on whether there are sufficient common features between the plaintiff and the proffered comparators so that a <u>meaningful comparison</u> exists and they are <u>comparable in all material ways</u>. *See Perry v. Dep't of Human Serv.*, 345 F.Supp.3d 1019, 1029 (N.D. Ill. 2018); *see also Alexander v. Cit Tech. Fin. Serv., Inc.*, 217 F.Supp.2d 867, 889 (N.D. Ill. 2002). The mere fact that a plaintiff and the proposed comparator have <u>some</u> similarities is immaterial. *See Brown v. DS Serv. of America*, 246 F.Supp.3d 1206, 1218 (N.D. Ill. 2017); *see also Perry*, 345 F.Supp.3d at 1029.

Plaintiff appears to argue he was a Black IE Manager who was treated differently that White IE Managers. This, of course, is purely conclusory and unsupported by the uncontroverted, material facts. In making this assertion, Plaintiff relies on the holding in *Orton-Bell v. Indiana*, 759 F.3d 768 (7th Cir. 2014). There, the Seventh Circuit examined, in part, whether a female plaintiff and a male comparator were similarly situated for purposes of evaluating the plaintiff's Title VII claim. The plaintiff in *Orton-Bell* was employed as a substance abuse counselor at a maximum security prison and had an affair with the Major in charge of custody at the prison. *Id*. at 769. Both individuals were subsequently discharged. *Id*. After both appealed their discharges, the Major testified against the plaintiff at her appeal, which allowed the Major

---

[5] Plaintiff points to alleged testimony from Charles Velez (at 5) in an attempt to suggest Defendants treated Plaintiff and Velez differently. First, Velez and Plaintiff are not similarly situated and Plaintiff has pointed to nothing in the record to dispute this. Second, Plaintiff mischaracterized the cited portions of Velez's testimony in an attempt to suggest Defendant FCA treated Plaintiff less favorably than Velez. Contrary to Plaintiff's assertion, Velez simply testified he decided to transfer to a different position but noted he could not recall whether the position he was leaving was posted before or after he transferred to the different position. He also did not testify Defendant FCA was barred from posting a position until an employee assumed another position. [Charles Velez Deposition, ¶ 65:18-66:19]

to retain his benefits. *Id*. The plaintiff was not offered the same opportunity to maintain her same benefits and filed her suit under Title VII. *Id*.

As Plaintiff correctly notes in his Memorandum in Opposition (Dkt. 99), the Seventh Circuit found that even though the plaintiff and the Major worked at different levels in the chain of command, they were similarly situated employees because they were both fired by the same supervisor, for the same conduct, and held to the same standards. *Id*. at 771. Based on this holding, Plaintiff incorrectly argues that he, too, was similarly situated to the IE Managers across the United States because the same corporate supervisors did the performance reviews and PLMs for all seven (7) IE Managers.

Not only does this argument demonstrate a fundamental misunderstanding with the PLM procedure and controlling authority, but it also demonstrates Plaintiff replies on pure speculation. At the time Plaintiff received his 2017 PLM, there were seven (7) IE Managers employed with Defendant FCA across the United States. (Dfnt. SOF 53). While their titles may have been the same and they worked for Defendant FCA, there are not sufficient common features between Plaintiff and those IE Managers to permit the trier of facts to find they were comparable in <u>all</u> material ways. None of these IE Managers had the same plant manager, direct supervisor, product lines, plant staff, or launch as Plaintiff. They also worked different hours than Plaintiff and experienced different issues with the launches at their respective plants. (Dfnt. SOF 53). Further, the same corporate supervisors did <u>not</u> prepare the performance reviews for these IE Managers and Plaintiff has cited to nothing in the record to support otherwise. As a result, Plaintiff can point to no similarly situated IE Manager outside of his protected class that Defendants treated differently.[6]

Plaintiff also appears to suggest Defendant Gebka treated him less favorably than similarly situated IE Managers by adding three additional objectives to his 2017 PLM. This is not supported by the undisputed, material facts. First, Defendant Gebka did not supervise any other IM managers and, as a result could not have treated Plaintiff worse than any other IM Managers. Second, during the meeting to discuss

---

[6] William Findlay testified there is an IE Department. He did not, as Plaintiff appears to suggest, testify that Defendant FCA had an IE Department that oversaw all IE Managers or that the same individual provided performance reviews for all IE Managers. [William Findlay Deposition, ¶ 54:14-17]. Notwithstanding this, Plaintiff has pointed to nothing in the record to support his assertion that he and these IE Managers were similarly situated in all material ways.

Plaintiff's 2017 PLM, Defendant Gebka referenced three objectives he believed Plaintiff should have met or otherwise addressed. (Dfnt. SOF 64). However, as the uncontroverted evidence establishes, Defendant Gebka citing these objectives never changed or modified Plaintiff's score, which remained a "4," as nowhere in the 2017 PLM score that Plaintiff received and reviewed with Davis are the additional objectives Defendant Gebka mentioned. (Dfnt. SOF 65-66). Thus, Plaintiff cannot point to a scintilla of evidence that demonstrates Defendant Gebka treated him differently than similarly situated employees.

Instead, the undisputed material facts demonstrates Defendant FCA treated Plaintiff on par with its White, management-level employees when discussing whether to issue a Performance Improvement Plan ("PIP"). Final Assembly Manager Clifford Carson, a White, management-level employee over the age of 40, received a rating of "2" on his 2017 PLM, which was lower than the score Plaintiff received. (Dfnt. SOF 50, 71). After receiving his PLM, Defendant FCA offered Carson an opportunity to transfer to another Plant without a PIP, and Carson accepted this. This was the same offer made to Plaintiff following his "4" score. Dfnt. SOF 70-71). Thus, Plaintiff cannot demonstrate Defendants treated him less favorably. In an attempt to create a genuine issue of material fact in his responsive brief, Plaintiff intimates that Carson was promised a "permanent position" with his transfer whereas Plaintiff was not. Tellingly, Plaintiff does not cite to any testimony, documentation or deposition transcript to support this assertion. This is mere speculation which is not enough to create a genuine issue of material fact. *See, e.g.*, *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019) (speculation and conjecture are not enough to survive summary judgement).

Even so, Plaintiff has provided no evidence to contest that Defendants' decisions regarding Plaintiff's employment were pretextual. It is not enough for Plaintiff to simply argue Defendants' offered legitimate and non-discriminatory reasons should be disbelieved. *See Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 578 (7th Cir. 2003); *see also Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Instead, Plaintiff must present evidence from which the factfinder could conclude Defendants' explanation for the employment action is unworthy of credence because it is false **and** their protected characteristic was the real reason for the decision. *See id*. Plaintiff has made no such showing.

10

Plaintiff cites to *Tabb v. National Railway Equipment Co.*, 2016 WL 9753964 (C.D. Ill. March 31, 2016) in an attempt to suggest Defendants' offered reasons for the decisions regarding Plaintiff's employment were pretextual and "shifting" because Defendants' explanations for their employment decisions changed over time. Interestingly, Plaintiff does so without citing to the record or providing anything more than conclusory statements regarding the same. Unlike the defendant in *Tabb*, Defendants have consistently stated that after reviewing the totality of Plaintiff's performance during the launch and comparing him to other IE Managers outside of Belvidere, Davis concluded Plaintiff's performance was insufficient, resulting in a "4" on his 2017 PLM. The decision to issue Plaintiff this 2017 PLM fell squarely within Defendant FCA's business judgment, something courts will not second guess. *See Murphy v. ITT Educational Services, Inc.*, 176 F.3d 934, 938-39 (7th Cir. 1999); *see also Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 270 (7th Cir.1995). The evidence demonstrates Defendant FCA issued the 2017 PLM for legitimate and non-discriminatory reasons. That is, Plaintiff did not perform as expected and was rated accordingly. Plaintiff has pointed to nothing in the record disputing this and has failed to demonstrate Defendants' offered reasons deserve no credence or that his race was the real reason for any decisions regarding his employment. As a result, Plaintiff's race discrimination claim fails and Defendants are entitled to summary judgment as a matter of law.

**C. Plaintiff Fails to Establish a Prima Facie Case of Retaliation.**

As discussed, establishing a *prima facie* case for retaliation requires a plaintiff to demonstrate they engaged in a statutorily protected expression, met their employer's legitimate expectations, sustained an adverse employment action, <u>and</u> were treated less favorably than similarly situated employees who did not engage in any statutorily protected expression. *See Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007); *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). For the most part, Plaintiff identifies the same occurrences he relies on for his race discrimination claim. However, Plaintiff cannot demonstrate he engaged in any protected activity, that he sustained an adverse employment action, or that he was treated less favorably than similarly situated employees. Plaintiff simply offers conclusory and blanket assertions that are not supported by the record.

First, Plaintiff offers no response to Defendants' argument that Plaintiff's complaint regarding Defendant Gebka is not statutorily protected activity. Courts in the Seventh Circuit have consistently held that a complaint of discrimination is not statutorily protected activity unless the complaining party also alleges the discrimination was due to a protected characteristic. *Otey v. City of Fairview Heights*, 125 F.Supp.3d 874, 882 (S.D. Ill. 2015); *Eskridge v. Chicago Bd. of Educ.*, 47 F.Supp.3d 781, 794 (N.D. Ill. 2014); *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007). While Plaintiff cites to various cases in the Fifth Circuit in an attempt to suggest otherwise, no such cases are binding on this Court. In fact, Plaintiff does not cite to one Seventh Circuit case in opposition to Defendants' assertion that Plaintiff was not the victim of retaliation. Thus, the longstanding holding in the Seventh Circuit stand and apply to this matter.

Here, the undisputed material facts demonstrate Plaintiff did not contemporaneously complain of discrimination due to his membership in a protected class. This is, of course, a failure that is fatal to his retaliation claim. The uncontroverted facts demonstrate Plaintiff made no complaint to management or human resources that the May 2017 incident was due to his race or age until after his voluntary resignation in July 2018. (Dfnt. SOF 38). In fact, it is uncontroverted Plaintiff only reported the May 2017 incident as an unwanted touching and requested an investigation into the same and did so without contemporaneously connecting his complaint with his protected characteristics. (Dfnt. SOF 38). Further, a year after the May 2017 incident when Plaintiff emailed Defendant FCA employees to discuss the incident, he again made no allegations that either the May 2017 Incident or his 2017 PLM were due to his protected characteristic. (Dfnt. SOF 47). Thus, Plaintiff has failed to show he engaged in any statutorily protected activity.

Moreover, and as discussed, the uncontroverted material facts confirm Plaintiff did not meet Defendants' legitimate expectations or that he suffered any adverse employment action. Likewise, the uncontroverted material facts confirm Defendants did not treat Plaintiff less favorably than any alleged similarly situated employees. Namely, the uncontroverted facts demonstrate: (i) the three additional objectives did not change or modify Plaintiff's score; (ii) Davis authored and finalized Plaintiff's 2017 PLM and Davis alone established the goals set forth in the 2017 PLM; (iii) Defendant Gebka was not part

of any meeting discussing Plaintiff's 2017 PLM prior to Davis preparing it; and (iv) Defendant FCA offered Plaintiff the opportunity to go on a PIP to improve his performance, which was the same exact offer given to Carson, a White management-level employee over the age of 40 who received a lower score than Plaintiff on his 2017 PLM. (Dfnt. SOF 50, 59, 64-66, 71). Further, and despite Plaintiff's repeated assertion to the contrary, nothing in the record supports his speculative claim that Defendant FCA was barred from issuing or proposing a PIP if they received a "4" on their PLM.[7] Thus, Plaintiff cannot make a prima facie case of retaliation.

Even if Plaintiff establishes a *prima facie* case for retaliation, Defendant FCA would still be entitled to summary judgment for the reasons previously discussed. That is, the uncontroverted facts demonstrate any employment actions regarding Plaintiff were legitimate, non-discriminatory, and not pretextual.[8] Thus, Plaintiff's retaliation claim fails and Defendants are entitled to summary judgment as a matter of law.

### D. Plaintiff's Negligent Supervision Claim Fails as a Matter of Law.

Plaintiff offers no response to Defendants' argument that this claim is preempted by the Illinois Human Rights Act ("IHRA"). Instead, Plaintiff appears to contend his purported ability to make a *prima facie* case of racial discrimination and retaliation are enough to overcome preemption. This is not accurate.

In assessing whether the IHRA preempts a common law claim, the question is not whether a plaintiff can establish a *prima facie* case for an alleged civil rights violation, but whether the common law and civil rights claims are inextricably linked so that a plaintiff cannot establish the elements of an alleged tort absent any legal duties created under the IHRA. *See Blatnicky v. The Village of Shorewood*, No. 91-cv-03213, 1995 WL 493474, at *10 (N.D. Ill. Aug. 16, 1999); *see also Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (1997). If the claims are inextricably linked and a plaintiff cannot establish their common law claim independent of any legal duty created under the IHRA, then the IHRA preempts the common law claim. *See id*.

---

[7] *See supra*, footnote 4.
[8] *See supra*, Section III.C.

Here, Plaintiff's negligent supervision claim is wholly inseparable from his claims of race discrimination and retaliation, as Plaintiff has alleged Defendant FCA's negligence caused him to suffer discriminatory treatment such as his alleged constructive discharge. (Dkt. 4, ¶¶ 131-132, 135). Given these allegations, Plaintiff's negligent supervision claim rests on him proving intentional discrimination occurred. That is, to prevail on his common law negligent supervision claim, Plaintiff must prove race discrimination and retaliation occurred and, specifically, that Defendants subjected him to discriminatory and retaliatory treatment due to his race and alleged engagement in a protected activity. This demonstrates Plaintiff's negligent supervision and discrimination and retaliation claims are inextricably linked. Accordingly, the IHRA expressly preempts Plaintiff's negligence claim and Defendants are entitled to summary judgment as a matter of law.

### E. Plaintiff Fails to Establish a Prima Facie Case of Assault and Battery.[9]

The controverted material facts simply do not permit the trier of facts to find Plaintiff suffered from an assault and/or a battery. As discussed, a battery is an unauthorized touching of another that offends a reasonable sense of personal dignity, while an assault is some conduct that creates a reasonable apprehension of receiving a battery. *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008); 720 ILCS 5/12–1. A touching is not deemed a battery or an assault unless the contact is harmful or offensive in nature. *See Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 622 (7th Cir.1989).

The uncontroverted facts demonstrate the May 2017 incident did not offend a reasonable sense of dignity or create a reasonable apprehension in Plaintiff. Velez, a witness to the incident, testified he did not view this interaction as harmful, violent, offensive, or harassing in any way and, instead, thought the

---

[9] As a preliminary matter, Plaintiff offers grossly mischaracterized recitations of deposition testimony. Despite his attempted assertion to the contrary (at 12-13), Velez never testified that the May 2017 incident occurred because Defendant Gebka was angry at Plaintiff following a trip to Italy. Notably, Plaintiff offers no citation in the record to support such a conclusory and incorrect statement. That is because Velez expressly testified he had no details regarding the Italy trip. [Charles Velez Deposition, ¶ 50:2-17]. Similarly, neither Velez nor Findlay testified that Defendant Gebka violated FCA US LLC Policy 3-6 as a result of the May 2017 incident. In fact, Velez testified he did not find Defendant Gebka's conduct threatening, harmful, violent, or harassing. [Charles Velez Deposition, ¶ 40:18-22, 52:1-3]. Findlay went further and expressly testified Defendant Gebka did not violate this policy. [William Findlay Deposition, ¶ 26:22-27:3]. Defendant Gebka also did not offer the testimony Plaintiff contends, instead, testified he did not violate the policy. [Defendant Gebka Deposition, ¶ 174:23-175:4].

meeting was motivational and greatly beneficial for those in attendance. (Dfnt. SOF 40). This confirms the witnesses to the incident did not view it as offensive or creating any reasonable apprehension in Plaintiff.

Moreover, Plaintiff's uncontroverted failure to take any actions to report the incident to law enforcement or a medical provider will not permit the trier of facts to find that he suffered a touching that was harmful or offensive in nature. Plaintiff appears to rely on *People v. Guerrero,* 953 N.E.2d 936 (Ct. App. Ill. 2011), in an attempt to suggest Plaintiff's lack of action is excusable. However, this case is distinguishable from the instant matter in two critical respects. First, *Guerrero* is a criminal case and does not speak to the standard to assert a prima facie case for the torts of battery and assault. Second, the uncontroverted material facts demonstrate Plaintiff never reported the incident to law enforcement, a medical provider, or a mental health professional. Unlike the subject witness in *Guerrero*, Plaintiff did not simply delay reporting the incident and, instead, voluntarily decided to forego doing so. (Dfnt. SOF 33-37). Additionally, Plaintiff seems to allege he did not report Defendant Gebka to law enforcement because he feared the police. This, however, is purely speculative and conclusory and is not supported by the record.

Simply put, the uncontroverted material facts establish failed to report the incident to law enforcement, file a police report, seek medical attention from a medical professional, or otherwise seek counseling from a mental health professional. (Dfnt. SOF 33-37). Such undisputed and voluntary inaction for the more than three (3) year period since the incident will prevent the trier of fact from concluding Plaintiff's personal dignity was reasonably offended or that he otherwise suffered a reasonable apprehension. Accordingly, Plaintiff's assault and battery claims fail and summary judgment is appropriate.[10]

### IV. CONCLUSION

For the foregoing reasons and those set forth in Defendants FCA US LLC and Tomasz Gebka's Memorandum in Support of Summary Judgment (Dkt. 91), Defendants respectfully request that this Court

---

[10] Plaintiff also appears to assert his assault and battery claim is not preempted by the IHRA. Defendants did not, however, make any such argument in their Memorandum in Support of Summary Judgment. As a result, Plaintiff's arguments regarding the preemption of these claims are moot.

grant their Motion for Summary Judgment on all of Plaintiff Jarlon Liner's claims and dismiss Plaintiff's lawsuit with prejudice.

Respectfully submitted,

**SEYFERTH BLUMENTHAL & HARRIS LLC**

*/s/ Charlie J. Harris, Jr.*
Charlie J. Harris, Jr., #90785737
Paul D. Seyferth, MO Bar #44761 (*pro hac vice)*
Linda A. Adeniji, Mo Bar #69594 (*pro hac vice*)
**SEYFERTH BLUMENTHAL & HARRIS LLC**
4801 Main Street, Suite 310
Kansas City, Missouri 64112
Telephone: (816) 756-0700
Facsimile: (816) 756-3700
Email: charlie@shblaw.com
paul@sbhlaw.com
linda@sbhlaw.com

and

Paul E. Starkman
**CLARK HILL PLC**
130 E. Randolph St., Suite 3900
Chicago, Illinois 60601
Telephone: (312) 985-5900
Facsimile: (312) 517-7589
Email: pstarkman@clarkhill.com

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

      I hereby certify that on the 29th day of January, 2021, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notice to the following attorneys of record:

      Calvita J. Frederick
      **Calvita J. Frederick & Associates**
      P.O. Box 802976
      Chicago, Illinois 60680
      Tel: (312) 421-5544
      Email: calvita.frederick@att.net

      **Attorney for Plaintiff**

      /s/ *Charlie J. Harris, Jr.*
      **Attorney for Defendants**